CLEMENS ELECTRICAL MANUFACTURING COMPANY *vs.*
WILLIAM A. WALTON.

Bristol.    December 5, 1898. — December 13, 1898.

Present: FIELD, C. J., HOLMES, MORTON, BARKER, & HAMMOND, JJ.

January 20, 1899. — May 17, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, BARKER,
& HAMMOND, JJ.

*Petition to prove Exceptions — Form of Bill — Distinct and Independent Exceptions — Verbal Differences — Amendment of Bill — Street Railway — Promissory Note — Illegal Consideration — Evidence.*

If, at the trial of an action, one of the defendant's requests for rulings was " that upon all the evidence the plaintiff cannot recover," and a bill of exceptions alleged by the defendant shows that there has been an attempt to abridge the evidence, this court cannot say, upon a petition to establish the truth of the exceptions, that this abridgment has not been made so far as was reasonably safe for the excepting party, and will not sustain a disallowance of the exceptions, on the ground that the bill was not in proper form.

If a bill of exceptions contains distinct and independent exceptions, and some of them are proved, these may be argued, although others are not established and are waived.

Where the difference between an exception as alleged and the exception as proved

before a commissioner appears to this court to be verbal and unimportant, the truth of the exception will be treated as established.

If the petitioner, upon a petition to establish the truth of exceptions, is willing, as to a certain exception alleged, to accept the facts as found by the commissioner, although this court does not see any substantial difference between the two statements, the bill may be amended in these respects according to the commissioner's report.

A construction company was employed to build several miles of street railway, and after the greater part of the work had been done, and the materials necessary to complete it were lying upon the ground, by substantially simultaneous votes the railway company notified the construction company that it declined to accept the construction, the latter accepted the refusal, and voted to sell to another railway company "all the material and other property now lying and being on the line of the street railway" in question for a certain sum, "to be paid for by the indorsed notes of said corporation," and the other railway company voted to buy of the construction company "all the material and other property owned by them" upon the line mentioned for the sum named; and the notes were given. *Held*, in an action by the construction company against an indorser before delivery of the notes, that evidence of any conversations or understandings between the directors of the several companies, at the time when they were all together and when the votes were passed, tending to show an illegal scheme, was admissible.

The rails of a street railway when laid become part of the railway company's road within the meaning of Pub. Sts. c. 113, § 56, whether they are realty or personalty, and the corporation, having refused to accept the construction of a portion of the road and such refusal having been accepted by the construction company, cannot lawfully become a party to a transaction between the three corporations by which in substance it sells that part of its road to another railway company.

PETITION to establish the truth of exceptions alleged by William A. Walton, in an action brought against him on June 29, 1895, by the Clemens Electrical Manufacturing Company, upon two promissory notes, one for $4,000, and the other for $3,714.12, each dated October 15, 1892, payable in two months after date to the Attleborough, North Attleborough, and Wrentham Street Railway Company, signed by that corporation, and indorsed by it and by the defendant; which exceptions were disallowed by *Hopkins*, J., who presided at the trial in the Superior Court.

The bill of exceptions as filed stated that at the trial the plaintiff produced the original notes, copies of which were set out, and put the notes in evidence, and then rested; that the defendant then introduced in evidence the records of the stockholders and directors of the Interstate Street Railway Company and the Attleborough, North Attleborough, and Wrentham Street Rail-

way Company, and portions of the records of the stockholders and directors of the plaintiff corporation ; that such portions of the above named records introduced in evidence as were material to any of the questions raised by the bill of exceptions were thereinafter fully set forth ; that no question was raised by the defendant as to the genuineness of the various signatures appearing either on the face or the back of the notes in suit ; and that the only evidence introduced as to the signing of the indorsements on the notes, or as to the delivery of the notes to the plaintiff, or as to the time when such indorsements or delivery were made, aside from such evidence, if any, as to these questions as was furnished by the notes themselves, and the admitted genuineness of the signatures thereon, and by the records of the three corporations, and the agreement of October 15, 1892, as thereinafter set forth, came from Homer M. Daggett, Jr., a witness called by the defendant, and Maynard E. Clemens, a witness called in rebuttal by the plaintiff.

The evidence of Daggett, who testified that he was present at all the meetings thereinafter referred to, held on October 15, 1892, whether of directors or stockholders of the three corporations above named, was then set out by questions and answers, and occupied about three printed pages.

Then followed the portions of the records above mentioned, which covered eleven printed pages.

The testimony of Daggett, which was continued, and which was set out partly by questions and answers, and partly in the narrative form, occupied the next three pages.  The following three pages were taken up by the recital of a discussion between the judge and the counsel for the defendant upon an offer of proof by the latter, which resulted in the exclusion of the evidence offered, and an exception to such exclusion.  The next eight pages consisted of the recital of questions to and answers by the witness, some of which were objected to by the plaintiff and excluded ; several offers of proof by the counsel for the defendant, interspersed with discussions between the judge and the counsel, the exclusion of the evidence offered, and an exception to such exclusion ; and the testimony of Clemens set out by questions and answers.

The bill then set forth twenty-eight requests for rulings, which

occupied two pages, and thereupon contained the following recitals :

" None of the above requests for rulings were given by the presiding justice, and the presiding justice failed and refused to give any of the above rulings, though expressly requested to give each and all of said rulings ; and the defendant duly excepted to the judge's failure and refusal to give said rulings and each and every thereof. . . .

" In the course of the argument of counsel for the defendant the presiding justice ruled as follows :

" ' I shall rule that the Attleborough Company had the right to purchase the materials belonging to the plaintiff corporation which were purchased, and for which these notes were given, and that they would be a good and sufficient consideration for the notes. In other words, I shall say upon all the evidence the plaintiff is entitled to recover upon all these notes.'

" The defendant duly excepted to these rulings as made by the presiding justice.

" The presiding justice thereupon stated to counsel for the defendant as follows:

" ' (The Court.) You say the plaintiff is not entitled to recover, and that question is saved to you. My purpose is to find for the plaintiff on these notes. You say on all the evidence you are entitled to a finding for the defendant : I rule otherwise. I do not see why your rights are not all saved in every conceivable aspect.'

" ' (Mr. Snow.) Does your honor refuse all the rulings ? '

" ' (The Court.) I have not yet seen them ; but it is clear, Mr. Snow, that your rights are all saved.'

" ' (Mr. Snow.) I think not, unless the claims are all passed upon.'

" ' (The Court.) Is there any mystery in this case as to the rights of the adverse parties? '

" ' (Mr. Snow.) We are entitled to present such propositions of law as we think material, and which are not, as I view it, included in the general proposition.'

" ' (The Court.) So far as I can conceive that your prayers are in line with your claims that are made from the beginning, the chances are that they will all be overruled. In any phase

of the question which has been presented to me, I cannot find for the defendant, but I must find for the plaintiff.'

" ' (Mr. Snow.)    We shall request your honor to pass upon each and all rulings in question, and we wish to except to all such rulings as are refused.'

" The presiding justice did not make any rulings of law pertinent to the merits of the case or to the questions raised by the foregoing requests for rulings other than as stated in this bill of exceptions. The presiding justice did not expressly or separately pass upon any of the above requests for rulings, though expressly requested by counsel for defendant so to pass upon each and all of the same, except so far as may be inferred from the rulings made by the presiding justice and the finding for the plaintiff as herein set forth. Without so passing upon any of said requests for rulings except as aforesaid, the presiding justice thereupon found for the plaintiff for the full amount of the notes in suit, and interest thereon, in the sum of nine thousand two hundred and twenty-eight dollars and twenty-nine cents ($9,228.29), and the defendant duly excepted to the judge's failure to pass upon said requests for rulings as requested as aforesaid."

The certificate of the judge, in disallowing the exceptions, was as follows :

" I have examined the foregoing bill of exceptions, and find that in form it does not conform to the rules of law, and that as to the substance it does not conform to the truth ; and I therefore disallow the same."

The petition was referred by this court to a commissioner, to hear the parties and their evidence and report his findings.

The report of the commissioner recited that the bill of exceptions set forth sixteen distinct and independent exceptions separately stated, those numbered in the report from one to thirteen inclusive being to the exclusion of evidence offered, the fourteenth to a ruling given, the fifteenth to a refusal to give rulings requested, and the sixteenth to the failure of the judge to pass upon requests for rulings.

The commissioner found that the first six exceptions were duly taken, and that the rulings excepted to and the evidence to which they applied are stated with accuracy.

In the case of the second exception he reported, at the request

of the plaintiff, the following facts, which did not appear in the bill of exceptions.

The question put to Daggett, "What was said at that time, either by the defendant or by the directors, or any of the directors of the plaintiff company, with reference to the consideration of the notes in suit?" was objected to by counsel for the plaintiff. The judge inquired whether it was meant as a preliminary question merely. Counsel for the defendant answered in the affirmative. The judge then said to the witness, "You may answer that question Yes or No."

As to the seventh exception, the commissioner found that counsel for the defendant stated to the judge that, in view of a certain agreement, dated October 15, 1892, between the plaintiff and the Interstate Street Railway Company, which had previously been introduced in evidence, they offered to show that the defendant and the Attleborough Company both put their signatures on the notes in question without receiving any actual consideration therefor, and that the defendant put his name on the notes in question at the request and for the accommodation of both the maker of the note, the Attleborough Company, and the Interstate Company. The judge thereupon said, "That I will exclude"; and to this ruling counsel for the defendant then excepted.

It was contended before the commissioner that this exception was not in conformity to the truth, without a qualifying statement that the ruling is to be taken in connection with preceding rulings, and related to the evidence offered, and not to the general proposition contained in the offer; that the ruling was that it was not competent to show by conversations between persons, officers and others, any facts to control the arrangement which appeared by the votes and records of the corporation. The offers of proof and ruling were in fact made in form, as set out in the bill of exceptions.* Upon exception being taken to the ruling, counsel

---

* The statement in the bill of exceptions was as follows:

"(Mr. Snow.) We have already proved the existence of. this agreement between the Clemens Company and the Interstate Company under date of October 15. . . . In view of that agreement we offer to prove that the defendant in this suit and the Attleborough road both put their signatures on the note in question without receiving any actual consideration therefor, and

for the plaintiff observed, " What I suppose your honor excludes is the manner in which they propose to prove?" This elicited, so far as appeared before me, no response from the judge or from counsel for the defendant, and no qualification or explanation of the ruling was offered by the judge. Under the offer in question, counsel for the defendant, as they testified at the hearing before me, were prepared to introduce no evidence touching the question of a lack of consideration moving to the Attleborough Company other than that previously offered and excluded. As to the lack of a consideration moving to the defendant, and as to his signing the notes in question at the request and for the accommodation of the Attleborough Company and the Interstate Company, they were, as they testified at the hearing before me, prepared under said offer to ask the defendant and Homer M. Daggett, Jr., first, whether the defendant had received any consideration for signing said notes; and, secondly, whether he signed them at the request and for the accommodation of the Attleborough Company and the Interstate Company, and they expected the witness to answer the first question No, and the second Yes. But at the trial counsel were not asked, and did not state, what specific evidence they were prepared to introduce under their offer.

" In order that the defendant's offer of proof and the ruling thereon may be presented in the same aspect as in the trial court, certain statements made by court and counsel in the course of the trial, which have been omitted from the bill of exceptions, should be inserted therein. If this is done, the bill will then contain, as I find, a consecutive account of everything that took place at the trial material to the question whether the ruling under consideration should be construed according to its literal import, as contended by the petitioner, or, as contended by the respondent, in connection with preceding rulings, and as relating to the manner of proof only. The amendments which I find ought to be made for the purpose stated are as follows."

---

that the defendant in this suit put his name on the notes in question at the request and for the accommodation of both the maker of the note, the Attleborough road, and the Interstate road.

" The evidence so offered was excluded by the court, and the defendant thereupon excepted to the ruling of the court excluding the same."

[Then followed the amendments suggested, consisting of the striking out of one paragraph and the substitution of others, and also the addition of several other paragraphs, the new matter containing discussions between the judge and counsel.]

The commissioner found that the eighth, ninth, twelfth, and fourteenth exceptions were duly taken, and that the rulings excepted to and the evidence to which they applied are stated with accuracy ; and that, in the case of the tenth and eleventh exceptions, no exceptions were taken, as alleged, to the rulings of the judge. Counsel for the defendant stated before the commissioner that they waived their claim thereto ; and it sufficiently appeared at the hearing before him that, in claiming these exceptions, counsel did not act in bad faith.

He found that in the case of the thirteenth exception the counsel for the plaintiff not only offered, but introduced in evidence, the record therein referred to ; that the bill of exceptions set out the offer, but not the introduction ; that the exception was duly taken ; and that the ruling excepted to, and the evidence to which it applied, except as above indicated, are stated with accuracy.

The commissioner further reported that upon the fifteenth exception the questions presented were whether or not the judge refused, as alleged, to make the rulings set forth in the defendant's written request therefor, and, if the judge so refused, whether or not the defendant duly excepted, as alleged, to such refusal ; that these questions would appear to be questions of law upon the facts ; and that the facts found by him were as follows :

" At the close of the evidence, Mr. Snow, of counsel for the defendant, presented to and left in the possession of the judge the written request for rulings set forth in the bill of exceptions, having first, however, exhibited it to counsel for the plaintiff. So far as appeared before me, the judge did not examine it. Mr. Snow then began his argument. Upon the termination of the arguments, the judge said : ' I shall rule that the Attleborough Company had the right to purchase the material belonging to the plaintiff corporation, which was purchased, and for which these notes were given, and that it would be a good and sufficient consideration for the notes. In other words, I shall say

that, upon all the evidence, the plaintiff is entitled to recover upon all these notes.'

" Exception to this was taken by counsel for the defendant.

" Thereupon the following colloquy ensued between counsel for the defendant and the judge: ' (The Judge.) You say the plaintiff is not entitled to recover, and that is saved to you. My purpose is to find for the plaintiff on these notes. You say on all the evidence you are entitled to a finding for the defendant. I rule otherwise. I do not see why your rights are not all saved in every conceivable aspect.'

" ' (Mr. Snow.) Does your honor refuse all the rulings?'

" ' (The Judge.) I have not yet seen them; but it is clear, Mr. Snow, that your rights are all saved.'

" ' (Mr. Snow.) I think not, unless the claims are all passed upon.'

" ' (The Judge.) Is there any mystery in this case as to the rights of the adverse parties?'

" ' (Mr. Snow.) We are entitled to present such propositions of law as we think material, and which are not, as I view it, included in the general proposition.'

" ' (The Judge.) So far as I can conceive that your prayers are in line with your claims that are made from the beginning, the chances are that they will all be overruled. In any phase of the question which has been presented to me, I cannot find for the defendant, but I must find for the plaintiff.'

" ' (Mr. Snow.) We shall request your honor to pass upon each and all rulings in question, and we wish to except to all such rulings as are refused.'

" The judge then leaned over to the clerk and told him to figure up the interest on the notes. Mr. Snow asked the clerk as to the interest, and was told what the interest and principal would be.

" Nothing further was said in the case, but subsequently, on the same day (March 24, 1896), the judge handed to the clerk his decision in writing, as follows: ' I find for the plaintiff, and assess damages in the sum of nine thousand two hundred and twenty-eight dollars and twenty-nine cents.' This was duly filed and docketed by the clerk, but counsel for the defendant had no notice or knowledge thereof until the filing of the bill of excep-,

tions.   The bill of exceptions was filed April 13, 1896, having been prepared and filed on the assumption that the court had found for the plaintiff, and due notice of such filing was on the same day given to the adverse party.

" The rulings requested as aforesaid by counsel for the defendant were given or refused, and if refused, an exception thereto was or was not taken, only as may be shown by the foregoing facts."

The commissioner found, as to the sixteenth exception, that the presiding judge did not, except as may be inferred from his finding for the plaintiff, pass upon any of the requests for rulings, although requested by counsel for the defendant to pass upon each and all of the same ; and that the defendant duly excepted to the judge's failure expressly to pass upon such requests so far, and only so far, as may be shown by the facts stated with reference to the fifteenth exception, and by the further fact that the exception in question was incorporated in the bill of exceptions.

*E. W. Burdett & C. A. Snow*, for the defendant.

*S. H. Tyng & C. C. Mellen*, for the plaintiff.

FIELD, C. J.   After the decision reported, 168 Mass. 304, the petition to prove the exceptions was referred to a commissioner with the usual powers, and his report is before us.   The argument has been confined to the questions whether the bill of exceptions, as originally filed by the defendant, is in proper form, and whether the truth of the exceptions therein alleged has been established.   We see nothing in the form of the bill of exceptions as filed which can be held to justify the disallowance of the exceptions.   One of the defendant's requests for rulings was " that upon all the evidence the plaintiff cannot recover."   This rendered it necessary that the substance of all the evidence relating to the plaintiff's cause of action should be set out in the exceptions.   The bill of exceptions as filed contains little that can be regarded as immaterial, and some complaint has been made by the counsel of the plaintiff that on some points sufficient evidence has not been recited.   It may be that some of the evidence which has been set out in the exceptions by question and answer could have been reduced to the narrative form ; but plainly there has been an attempt to abridge the evidence, and we cannot say that this has not been done, so far as

was reasonably safe for the excepting party. The present case is easily distinguished from *Ryder* v. *Jenkins*, 163 Mass. 536.

In *Sawyer* v. *Yale Iron Works*, 116 Mass. 424, 433, it is said in the opinion : " If the bill, as tendered to the presiding judge, contains several distinct and independent exceptions, clearly and separately stated, the truth of one or more of them may be established, although the others are not proved as alleged, or are waived by the excepting party." See *Morse* v. *Woodworth*, 155 Mass. 233.

It appears from the report of the commissioner that ten of the exceptions alleged, which are numbered in the report as follows, viz. 1, 2, 3, 4, 5, 6, 8, 9, 12, 14, " were duly taken, and that the ruling excepted to and the evidence to which they related are stated with accuracy." The evidence reported at the request of the plaintiff concerning the second exception seems to us immaterial, and does not tend to modify the exception as taken. These are distinct and independent exceptions, and the truth of them has, we think, been established. The exceptions alleged, which are numbered in the report 10 and 11, are not established, and are waived. As to the exception numbered 13 in the report, we think that the difference between the exception as alleged and the exception as proved is verbal and unimportant, and the truth of this exception is established. *Markey* v. *Mutual Benefit Ins. Co.* 118 Mass. 178.

As to the exceptions numbered 15 and 16 in the report, it appears that the petitioner is willing to accept the facts as found by the commissioner, and we think that he should be permitted to do so. Whether on these facts the same questions in the same aspects are presented in the exceptions reported as in the exceptions filed may perhaps be disputed. We do not at present see any substantial difference between the two statements, but the bill may be amended in these respects according to the report of the commissioner. See *Lemery* v. *Boston & Maine Railroad*, 167 Mass. 254, 256 ; *Morse* v. *Woodworth*, 155 Mass. 233. There remains only the exception numbered 7 in the commissioner's report. We think that the same disposition of this should be made as of the fifteenth and sixteenth exceptions.

The exceptions as alleged in the bill as filed, except those numbered 10 and 11 in the report of the commissioners, will

stand for argument with the findings of the commissioner on the seventh, fifteenth, and sixteenth exceptions. *So ordered.*

Afterwards the exceptions, as thus established, were argued on the merits. The facts appear sufficiently in the opinion.

*C. A. Snow,* for the defendant.

*S. H. Tyng,* for the plaintiff.

HOLMES, J. This is an action brought by the original holder of two promissory notes against a party who indorsed them before delivery. There was no consideration other than that moving to the maker, and the principal defences are that it turned out that the maker received none, or that if it did receive one the consideration was illegal.

The plaintiff was a construction company, and was employed to build four miles of street railway for the Interstate Street Railway Company, running to the lines of the Old Colony Railroad, which it was necessary for the Interstate Company to cross in order to use the four miles of track when laid. Three miles and a quarter at least had been laid and finished, except overhead work, and the materials necessary to complete the work were lying upon the ground, when, for some reason, perhaps because it could not get leave from the railroad commissioners to cross the Old Colony tracks, as required by St. 1891, c. 399, § 2, the Interstate Company wished to withdraw from its bargain. Thereupon, by substantially simultaneous votes, the Interstate Company notified the plaintiff that it declined to accept the construction; the plaintiff accepted the refusal and voted to sell to another company, the Attleborough, North Attleborough, and Wrentham Street Railway Company, "all the material and other property now lying and being on the line of the street railway" in question, "for the sum of ($27,214.12) twenty-seven thousand two hundred fourteen and $\frac{12}{100}$ dollars, to be paid for by the indorsed notes of said corporation," and the Attleborough Company voted to buy of the plaintiff "all the material and other property owned by them" upon the line mentioned for the above named sum. The notes were given and are the notes in suit. At the same time the plaintiff covenanted with the Interstate Company that all sums received in payment of the notes should be credited and allowed to the

Interstate Company upon claims which the plaintiff had against the latter.

There was evidence that the directors of the plaintiff, and, it would seem, of the Interstate Company, were in meeting, or at least were present at the meeting of the stockholders and directors of the Attleborough Company when the vote to buy was passed and the notes given, and that the contracts were made after the matter had been " threshed out." Evidence was offered of what was said at the time, either during the meetings or before the parties had left the room, to show that the real understanding was that the notes were given for the value of that part of the road, and upon an estimate of what the claims of the plaintiff against the Interstate Company would amount to, but that it turned out that the Interstate Company did not owe the plaintiff anything. The evidence was excluded, and the defendant excepted.

The judge ruled, subject to exception, " that the Attleborough Company had the right to purchase the materials belonging to the plaintiff corporation, which was purchased, and for which these notes were given, and that it would be a good and sufficient consideration for the notes," and, evidently thinking that any rulings asked by the defendant would be rulings preventing the plaintiff from recovering, which he had met by ruling the other way, found for the plaintiff without looking at some requests handed him on the defendant's behalf. One of these was that the Interstate Company was prohibited from making such a sale as the present by Pub. Sts. c. 113, § 56, forbidding a street railway company to sell or lease its road.

We mention this last request of the defendant in connection with the exception to the exclusion of evidence because it shows that along with the alleged failure or want of consideration the defendant relied upon making out an illegal scheme, and it is not unreasonable to suppose that the evidence offered was expected to throw light upon that aspect of the case as well as the other. The aspect of illegality impresses us more than the other, which seems to have been more pressed. We find it difficult to see how the claims of the plaintiff against the Interstate Company can have been the consideration for the notes. What the defendant was trying to do looks much more like an effort to ·

override the promise to pay a certain sum, contained in the notes, by oral evidence that the real undertaking was to pay an amount equal to the claims.  This was in flat contradiction of the instruments, and could not be done.  But while the judge was right upon the point to which his attention was most directed, we cannot help thinking that the possible illegality of the scheme was not sufficiently considered.

We agree that if the sale was in the terms of the vote, and those terms were legal, it would be none the worse that the transaction came very near to illegality, and was framed so as to avoid it.  One meaning of drawing a line between the lawful and the unlawful is that you have a right to get as near the line as you can if you do not cross it.  If the sale was a sale of personal property only, and of personal property the title to which never had passed to the Interstate Company, it is no less good if the Interstate Company refused to accept the title in order that the sale might be made, and because it doubted whether it could make a sale after it became the owner.  But suppose that it was understood by all the directors at the time of passing their several votes that what really was intended was a transfer of its location by the Interstate Company to the Attleborough Company, and that the vote was put in the form which it took to conceal that purpose.  If that was the real understanding and bargain between the directors, the fact that it was not expressed in their vote would not save the corporate action from illegality.  It is true that there could not be a technical transfer without a vote.  But the law wants to prevent the actual as well as the technical transfer.  If in the minds of the movers of the corporations the sale was a means to the abandonment of the road by one company and its occupation and use by another, the law will not be blinded to the character of the act because they had wit enough not to betray their scheme in a vote.  And certainly there was some color for a finding that the scheme which we have imagined actually was entertained, for a witness testified that the Interstate Company abandoned their road, and about two weeks after the sale the Attleborough Company was using the property.  If the evidence offered had been admitted, perhaps even on the evidence as it stood if the judge had paid attention to the

defendant's requests for rulings, he might have found that the foregoing was the actual state of the case.

But take the evidence as it stands, and assume that the whole transaction was as it appears in the votes, even then there is a question. It is true that the Attleborough Company's vote, as we have pointed out, was to buy the material and other property " owned by " the plaintiff, words not used in the plaintiff's vote. But it is plain that both votes meant, and were construed by conduct to mean, the tracks which had been laid as well as the loose material. Now, as to these, it was all very well for the Interstate Company to profess to refuse to accept them, but the title had passed as soon as the rails were annexed to the freehold. The plaintiff had no franchise or easement there. The Interstate Company had. It is not necessary to consider whether the rails became real estate and followed the easement. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279, 282. *Meriam* v. *Brown*, 128 Mass. 391. When laid down they became part of the Interstate Company's road within the meaning of the statute, whether they were realty or personalty. Only as part of that company's road had they a right to be where they were. The company had no more right to sell its rails for the purpose of removal, with the intent that its road for those four miles should be abandoned, than it had to sell them to be kept where they were and to be used along with the franchise by the buyer. *Richardson* v. *Sibley*, 11 Allen, 65, 70.

Upon the foregoing considerations it seems to us that justice to the defendant requires a new trial, at which evidence shall be admitted of any conversations or understandings between the directors of the several companies, at the time when they were all together and when the votes were passed, tending to show an illegal scheme such as we have supposed. And if the evidence does not give a different color to the facts, we think the defendant will be entitled to a ruling that the Interstate Company had acquired a title to the rails which had been laid and could not lawfully become a party to a transaction by which in substance it sold that part of its road.

*Exceptions sustained.*