CLEMONS ELECTRICAL MANUFACTURING COMPANY *vs.*
WILLIAM A. WALTON.

Bristol.   March 1, 1910. — June 24, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, &amp; BRALEY, JJ.

*Street Railway,* Sale of property.   *Evidence,* Relevancy and materiality, Remoteness.

The provisions of Pub. Sts. c. 113, § 56, which now are included in St. 1906, c. 463, Part III. § 51, that a street railway company shall not sell or lease its road unless authorized so to do by its charter or by special act of the General Court, forbids a sale by such a company of property necessary to enable it to perform the duties assumed by it as a carrier.

A Rhode Island street railway corporation, which by St. 1891, c. 399, was authorized by the Legislature of this Commonwealth to construct a street railway across the State line and for four miles within this Commonwealth and was made subject to all general laws of this Commonwealth governing street railway corporations, after it has built a large part of the four miles of road and then has discontinued building because it was unable to procure permission to cross a steam railroad at grade, cannot sell such part of the road as it has built to a domestic street railway corporation without permission of the General Court, even although the road so built is not finished so that cars can be run upon it and the corporation does not attempt to sell its franchise; and the fact, that the corporation has not fulfilled conditions upon which a town in which the road was built had granted to it a location for its tracks, does not make such a sale legal if the town has not taken steps to invalidate the location, because the location is valid and the tracks are a road of a street railway company within the meaning of the statute until the town avoids the location.

At the trial of an action in which the legality of a sale of its road by a street railway corporation is an issue and the plaintiff contends that the location of the railway was abandoned before the sale, it is proper for the presiding judge to rule that "the abandonment of a location must have been a corporate act," and therefore to order stricken out as incompetent and irrelevant an affirmative answer of one who was the president and a director of the corporation, made in cross-examination to the question whether he had not testified that "you abandoned that location" at a date previous to the attempted sale.

At the trial of an action in which an issue was the legality of a sale of its road by a street railway company under the provisions of Pub. Sts. c. 113, § 56, pro-

hibiting the sale of its road by a street railway company unless it is authorized so to do by its charter or by special act of the General Court, the plaintiff contended that the sale was lawful, while the defendant contended that it was unlawful, and it appeared that at the time of the sale the road was built only in part. The president of the company, testifying for the defendant, stated in direct examination that the company had intended to bond the whole road as a continuous line, including the unbuilt portion. On cross-examination he testified that it had had the intention of so bonding the road "from the beginning." He then was asked whether the scheme of bonding was brought up at a meeting of the directors of the company before the date of an attachment of its property made by a construction company. The presiding judge ruled that the time when the scheme of bonding was brought up was immaterial and excluded the question. *Held*, that the exclusion was within the judge's discretion.

CONTRACT against the indorser upon two promissory notes. Writ dated June 28, 1895.

The first note read as follows :

"North Attleborough, Mass., Oct. 15, 1892.
$4000.

Two months after date the Attleborough, North Attleborough and Wrentham St. Ry. Co. promise to pay to the order of ourselves Four Thousand Dollars at First Nat. Bank, Attleborough.

Value received,

Attleborough, No. Attleborough & Wrentham St. Ry. Co.,
By C. T. Guild, Treasurer.

Countersigned,

Peter Nerney, President."

On the back of the note were the following indorsements :

"For value received I hereby waive my right of demand and notice on the within note.

W. A. Walton.

W. A. Walton.
Attleborough, No. Attleborough & Wrentham St. Ry. Co.
By C. T. Guild, Treasurer.
Clemons Electrical Mfg. Co.
M. E. Clemons, Treas."

The second note was the same as the first, excepting that the amount was $3,714.12.

The case was before this court at previous stages, as reported in 168 Mass. 304, and 173 Mass. 286, in both of which reports the first word of the plaintiff's name is spelled incorrectly with

an " e " in the last syllable, that letter having been used in the writ.   After the second rescript it was heard by *Bell,* J., without a jury, who found for the defendant; and the plaintiff alleged exceptions.

The facts are stated in the opinion.

*W. W. Doherty,* for the plaintiff.

*E. W. Burdett,* (*J. Gordon* with him,) for the defendant.

LORING, J.   A new trial of this case was had in June, 1900, after the decision in *Clemens* [*sic*] *Electrical Manuf. Co.* v. *Walton,* 173 Mass. 286.   The judge who then heard the case without a jury made his decision in July of that year.   This bill of exceptions was allowed nearly nine years later, on March 24, 1909. The plaintiff made forty-nine requests for rulings on the merits. These were refused and exceptions taken.   In addition the plaintiff took two exceptions to rulings on evidence.

Apart from the rulings on evidence we have failed to discover in this bill of exceptions any serious question of law not decided in *Clemens Electrical Manuf. Co.* v. *Walton,* 173 Mass. 286.

The facts were these : The Interstate Street Railway Company was a corporation created by the State of Rhode Island.   By St. 1891, c. 399, it was authorized to extend its railway across the State line into the towns of Attleborough, North Attleborough and Seekonk in this Commonwealth.   It was provided in that act that this foreign corporation should be subject to all general laws governing street railway corporations, and in addition that its tracks should not cross the tracks of any steam railroad at grade without the consent of the board of railroad commissioners.   On March 19, 1892, the selectmen of the town of Attleborough granted to this foreign corporation a location from the terminus of the tracks of the Attleborough, North Attleborough and Wrentham Street Railway Company in the town of Attleborough to the Seekonk line.   The Attleborough, North Attleborough and Wrentham Company was a domestic corporation, and for convenience we shall speak of it as the Attleborough Company.   As we understand the bill of exceptions this line was about four miles long and crossed the tracks of the New York, New Haven, and Hartford Railroad in that part of Attleborough known as Hebronville.   Part of this four miles of track was on one side of the tracks of the New York, New Haven, and

Hartford Railroad and part on the other side of them. On March 1, 1892, the Interstate Railway Company filed its petition with the railroad commissioners for leave to cross the tracks of this steam railroad at grade. On April 11, 1892, this petition was refused by the railroad commissioners. In case of a domestic railway corporation a location at grade across a steam railroad could be granted under Pub. Sts., c. 113, § 7, by the selectmen of the town in which the crossing is situate, and the Attleborough Company (whose terminus in Attleborough was the starting point of the location granted to the Interstate Company) was as we have said a domestic corporation. It appears from the bill of exceptions that in October of the same year the ownership of the three corporations here in question, to wit, the Interstate, the Attleborough and the plaintiff Electrical Company, was substantially the same. On April 19, 1892, the directors of the Attleborough Company filed with the selectmen of Attleborough a petition for a location over the four miles here in question, over which a location was granted to the Interstate Company on March 19, 1892. The president of the Interstate Company (without authority so far as appears on this record) on August 24, 1892, notified the selectmen that the Interstate Company abandoned the location granted to it, and on the following day (August 25) in the name of the Interstate Company requested the selectmen to grant a location over that line to the Attleborough Company, and undertook to agree in the name of the Interstate Company, in consideration of such a grant to the Attleborough Company, to abandon the location of the Interstate Company over that line. On September 1, 1892, the selectmen granted a location to the Attleborough Company over four miles here in question, including the crossing of the steam railroad, and that location was accepted by the directors of the Attleborough Company on September 30, 1892. On August 18 the plaintiff corporation had brought suit to recover from the Interstate Company the amount due it for work done on these four miles, and attached its property. On October 15, 1892, the persons interested in the three corporations dined together at the Park Hotel in Attleborough. Just who were present does not affirmatively appear. But it is in evidence that at least a majority of the directors of the three corporations were there.

There was evidence that all present at the dinner remained in the room thereafter, throughout the several meetings about to be described.   First, the directors of the Interstate Company met and voted not to accept the work of the plaintiff corporation over the four miles here in question and to notify that company thereof.   A "certified copy [was] forthwith handed to [the] secretary" of the plaintiff corporation.   Then the directors of the plaintiff corporation met and voted to sell to the Attleborough Company "all the material and other property now lying and being" on the four miles here in question, for $27,214.12, to be paid for by the indorsed notes of the Attleborough Company, and to agree to credit the Interstate Company with all sums received by it on said notes of the Attleborough Company, the suit against the Interstate Company to continue until its claims against the Interstate Company should have been paid.   These directors also voted to accept "the declination as received from the Interstate Street R. R. Co., declining to accept the construction of that part of their line" over the four miles in question. Then the directors of the Attleborough Company met and voted to buy of the plaintiff corporation for $27,214.12, "all the material and other property owned by them" on the four miles here in question, and to issue notes therefor.

The notes here in suit are two of the notes given in pursuance of that vote, and the suit is against the indorser on them.   One Daggett, who was president of the Interstate Company, a director of the Attleborough Company and, as we understand the bill of exceptions, a stockholder in the plaintiff corporation, testified "That we felt that it was very important that we have a continuous line.   That he had outlined a plan which he had conceived, of having the cars of the Interstate Company cross the road, and his scheme was that the Interstate Company should abandon that part of their road, and that the Clemons Company should sell it to the Attleborough road, and the selectmen would give the Attleborough road the right of way which would include the right to cross the railroad track, and the votes that were passed at these meetings were passed in accordance with that scheme." He also testified that the four miles of road were operated by the Attleborough Company from November 23, 1892, (when we assume the work of construction was entirely completed,) to

June 30, 1893, " when it [these four miles of road] became the property of the Interstate Company by the acquisition [by the Interstate Company] of the stock of the [Attleborough] Company." He further testified " that the Interstate Company never rejected this Hebronville branch on the ground that it was unsatisfactory." One Clemons, the treasurer and general manager of the plaintiff corporation, one Demarest, the president of that corporation, and one Guild, who was interested in all three companies, testified that they attended all the meetings on October 15, 1892, and that no allusion was made to the scheme testified to by Daggett.

The judge who tried this case without a jury found that the Interstate Company was unwilling to go to the expense of an overhead crossing and that the work stopped for that reason ; that this was known by all the parties and by the selectmen of Attleborough. That under these circumstances there were but two courses open to those interested, to abandon the scheme or to transfer the franchise and property to the Attleborough Company, and " that all the steps taken were for the purpose of transferring the franchise and property. The plaintiff was a party to the transaction. It is inconceivable that it should have accepted the rejection of its work except upon the understanding that the franchise and property were to be transferred to a railway which would pay the bill of the plaintiff. The acts seem to me so significant that I am compelled to regard them as more reliable than the present testimony of parties interested given eight years after the event."

The only real question which arose on this evidence was as to the plaintiff's being a party to the evasion of St. 1891, c. 399, requiring the Interstate Company to obtain the consent of the railroad commissioners to cross the steam railroad tracks at grade, and of Pub. Sts. c. 113, § 56, forbidding a street railway company to sell its road unless authorized so to do by the Legislature. The testimony of the three witnesses just referred to raised a question upon that point. That was the question of fact referred to by the judge at the end of his finding upon which he found against the plaintiff.

As we have said, we find no serious question of law raised by the forty-nine requests for rulings which was not passed upon

by this court in *Clemens Electrical Manuf. Co.* v. *Walton*, 173
Mass. 286. We shall take up only a few of them. It has been
urged * upon us that at most the scheme involved a transfer by
the Interstate Company of its property and not a transfer of its
franchise. But a transfer of the property necessary to enable a
railway to perform its duties as a public carrier is as much for-
bidden by Pub. Sts. c. 113, § 56, as a transfer of its franchise.
That was pointed out in the original case of *Richardson* v.
*Sibley*, 11 Allen, 65, 70, and reaffirmed and decided in *Clemens
Electrical Manuf. Co.* v. *Walton*, 173 Mass. 286. See particu-
larly page 300 where that part of the opinion in *Richardson* v.
*Sibley* is referred to.

Even if it were the fact that on a *bona fide* refusal to accept
the work the plaintiff corporation could have removed the ties
and rails laid by it on the four miles here in question, that was
of no consequence if the judge found as Daggett testified that
the work was "never rejected . . . on the ground that it was
unsatisfactory." The fact that the road on these four miles was
not finished so that cars could be run over it was of no conse-
quence. The rule is that property necessary to enable a railway
to perform the duties assumed by it as a public carrier cannot
be sold without authority from the General Court. The work
of construction on the four miles here in question, which was
valued at $27,214.12 comes within that rule. It is plain that
the unauthorized attempt of Daggett on August 24 and 25 did
not work an abandonment of the location of the Interstate Com-
pany, and that, if it had, it could be found to be a part of the
scheme which was completed on October 15.

The fact that there was no evidence that all the conditions set
forth in the grant of the location to the Interstate Company on
March 19 had not been performed is of no consequence.† If for

---

* The plaintiff asked the judge to rule " (4) that an unfinished road, such
as the road in this case seems to have been on August 25, 1892, or on Octo-
ber 15, 1892, unfitted for use as a street railway and on which cars could
not run, is not a road of a street railway company within the meaning of
Pub. Sts. c. 113, § 56, and the prohibition therein contained " and " (5)
that the structure in question as on the evidence in this case, it existed on
August 24, 1892, or on October 15, 1892, was not in law a street railway, or
a road of a street railway."

† The plaintiff asked the judge to rule " (14) that the Interstate Company
acquired no rights of any kind in the streets mentioned in its application for

that reason that location could have been avoided upon the proper steps being taken, no such steps had been taken, and until they were taken it stood as a valid location.

We think that there was no error in refusing the forty-nine requests for rulings on the merits.

We are also of opinion that there was no error in the rulings on the evidence.

On cross-examination Daggett was asked whether he had not previously testified that "you abandoned that location" before October 15, and he testified that he did. The presiding judge ruled that "the abandonment of a location must have been a corporate act," and ordered the answer stricken out as not being competent evidence. The ruling was right. In addition the plaintiff previously had put in evidence Daggett's (apparently unauthorized) attempt to abandon the location on August 24 and 25, stated above, and this question assumed that Daggett's unauthorized attempt was effectual.

Daggett testified on direct examination that the Interstate Company intended to bond the whole road as one continuous line, including the crossing of the steam railroad here in question. On cross-examination he testified that this purpose of the Interstate Company to bond the road was one which it had had from the beginning. He then was asked whether this scheme of bonding the entire road was brought up at any meeting of the directors of the Interstate Company before the attachment which was on August 18. On the defendant's objecting that the time when this scheme was brought up was not material the question was excluded. It was for the presiding judge to determine whether an inquiry as to the time when this scheme of bonding the whole road was first brought up in a director's meeting had sufficient bearing on the issues on trial to justify its being pursued. This determination will not be overturned unless plainly wrong. We are of opinion that it was right.          *Exceptions overruled.*

a location until it had filed with the proper authorities the description and boundaries of the property or locality over which it sought a right of way, and that the burden of proof is on the defendant to show such filing "; and "(15) that the Interstate Company acquired no rights of any kind in the location conditionally granted, until it complied with all the terms and conditions annexed to and made a part of said grant; that the burden of proof is on the defendant to show that it has complied with all such terms and conditions."