NEW YORK PRACTICE REPORTS. 277

People on the Relation of the Walkill Valley R. R. Co. agt. Keator *et al.*

## SUPREME COURT.

THE PEOPLE ON THE RELATION OF THE WALKILL VALLEY
RAILROAD COMPANY agt. NATHAN KEATOR *et al.*, assessors,
&c., of the town of Rosendale.

THE SAME agt. ABRAM P. KEATOR *et al.*, assessors, &c., of the
town of Rosendale.

*Railroads — Taxation of — Basis of assessment — Evidence of value — Cer-
tiorari to review assessment.*

In estimating the value of railroad property within the town, the assessors
are not to be governed solely by its costs, but rather, though not exclu-
sively, by its productiveness for railroad purposes.

The value of railroad property must almost entirely depend upon its
capacity to earn money for its owners. It should be valued as a part
of a whole, a continuous way to carry passengers and freight from one
commercial business point to another, and the profit of its use for that
purpose.

Upon a trial upon an issue raised upon *certiorari*, to review an assessment
on railroad property, as excessive as compared with the valuation of
other property in this town, where it was made to appear that while
the property in the town other than the railroad property had not been
assessed or valued at a greater sum than forty per cent of its actual
value, computed as the statute requires it to be computed, while such
railroad property had been valued and assessed at its full actual value:

*Held*, that the valuation of the railroad property should be reduced sixty
per cent.

On *certiorari* to review an assessment, costs will not be awarded against
the assessors, unless it is found that the assessors have acted in bad
faith in making such assessment.

*Ulster Special Term, May,* 1884.

CERTIORARIS to review assessments of the relator's real
estate in the town of Rosendale in the years 1880 and 1881.

*Peter Cantine, S. L. Stebbins* and *F. L. Westbrook*, for
relator.

*A. T. Clearwater* and *J. V. V. Kenyon*, for respondents.

People on the Relation of the Walkill Valley R. R. Co. agt. Keator *et al.*

WESTBROOK, *J.* — The real estate of the relator in the town of Rosendale was valued upon the assessment-roll of the town in the year 1880 at $62,000, and in the year 1881 at $70,000. Claiming that such valuations were excessive as compared with the valuations of the other property in the town, the relator by writs of *certiorari* asks that such assessments be reviewed and corrected.

The statutes of this state (2 *R. S.* [7th ed.], 994, *sec.* 8) have, in prescribing the form of the oath which the assessors must append to their assessment-roll upon the completion of the assessment, declared the rule which is to be observed by them in their valuations of real estate for the purposes of taxation. Those statutes require them to swear that they " have estimated the value of the said real estate at the sums which a majority of the assessors have decided to be the full and true value thereof, and at which they would appraise the same in payment of a just debt due from a solvent debtor."

In complying with this provision of the law, as a railroad property cannot as a dwelling have any fancy value by reason of its location or the expenditure thereon of large sums of money which would conduce to the comfort of the owner, it is evident that the assessors in fixing its value must be very largely controlled by its ability to earn money, and the productiveness of its use for the purposes of a railroad. As an original question it would seem to be reasonably clear that the value of railroad property must almost entirely depend upon its capacity to earn money for its owners, and that therefore no creditor would receive from a solvent debtor in payment of his debt, railroad property at a greater price than that which would be a fair one based upon its earning capacity.

It is not, however, necessary to argue this as an original question, as in the case of *The People ex rel. Ogdensburg and Lake Champlain Railroad Company* agt. *Pond* (13 *Abb. N. C.*, 1), this court held that "the taxable value of a railroad should not be determined alone by the long narrow strip of land for farming or any other purpose, except its use for the bed of a rail-

road. Nor should the portion of a railroad situated in a particular town be estimated by the cost of any expensive rock cut or quicksand filling, or a long tunnel located in that town. It should be valued as a part of a whole, a continuous way to carry passengers and freight from one commercial business point to another, and the profits of its use for that purpose."

This principle must have been concurred in by the court of appeals (92 *N. Y.*, 643), because that court, when the case came before it for review, dismissed the appeal on "the ground that there was sufficient evidence to authorize the supreme court to exercise its discretionary power," which conclusion that court could not have reached, if, in its opinion, the supreme court had adopted a wrong legal principle in estimating the value of the railroad (*See in this connection The People ex rel., &c., agt. Barker*, 48 *N. Y.*, 70, 77).

With this rule as the guide to determine the value of the real estate owned by the relator, it is apparent that the cost of the structure of the relator in the town of Rosendale, and the expensive bridge which spans the Rondout creek within its limits, has very little, if anything, to do with the valuation of its property by the assessors of such town. Indeed, a large expenditure of money through a town in the construction of a railroad made necessary by bridges, excavations and fillings, rather depreciates than adds to its value for railroad purposes, because the necessary repairs to a structure, largely composed of bridges, cuts and fills, must be considerably in excess of those required upon a railroad track running over a level country, in which there is comparatively little of bridging, excavating and filling. In determining then the value of the real estate of the relator in the town of Rosendale, the rule adopted by this court, both at special and general terms, and confirmed by the court of appeals, will be followed.

The total length of the railroad of the relator in the town of Rosendale, is 7.3520–10,000 miles, which to make the gross valuation of the assessors, must have been valued at a sum of between $9,000 and $10,000 per mile.

People on the Relation of the Walkill Valley R. R. Co. agt. Keator *et al.*

The length of the entire road of the relator, extending from Montgomery in the county of Orange, to the city of Kingston, in the county of Ulster, is thirty-three miles.

The gross earnings of such road from September 30, 1878, to September 30, 1879, were $85,012.14; its operating expenses during the same period were $60,766.69; its taxes were $9,822.31, leaving its net earnings during that period $14,423.14. From September 30, 1879, to September 30, 1880, its gross earnings were $100,760.43; its operating expenses were $70,376.74; its taxes were $9,050.98; and its net earnings were $21,332.71. From September 30, 1880 to September 30, 1881, its gross earnings were $103,877.68; its operating expenses were $83,453.29; its taxes were $10,145. 16; and its net earnings $10,279.23.

The average earnings per year during the three years were $15,345.02, or thereabouts, which would be equivalent to six per cent interest upon a capital of about $255,750, or to five per cent upon a capital of about $306,900. It would seem that five per cent is not an unreasonable rate of interest to be obtained from an investment in a railroad property, and to produce that revenue to the owners the property of the relator should not be valued at a greater or higher sum than at the rate of about $9,300 per mile, which is a sum considerably larger than the value placed upon it by the expert witnesses examined in behalf of the relator, and a good deal less than its estimated value by the testimony produced on the part of the respondents. From the data and figures above given, which seem to me to be better and safer guides to the value of the property than the opinions of witnesses, or sales of property under peculiar circumstances, it would appear that the property of the relator in the town of Rosendale has not been overvalued, and therefore if the only error complained of was an excessive valuation put upon its property, the relator would have no just cause of complaint. It claims, however, that while its property has been valued at a sum equal to its entire and actual value, the same rule of valuation has not been

People on the Relation of the Walkill Valley R. R. Co. agt. Keator *et al.*

applied to the other property in the town. Is this claim by the relator just?

In the consideration of this question great difficulty has been experienced, and after a careful examination of the voluminous testimony given upon these proceedings, it is difficult to reach a satisfactory conclusion as to the rule which the assessors have adopted in making up their assessment. We have, however, some general facts which throw more or less light upon that question, and they are these:

*First.* In the year 1880 there was no personal property assessed in the town of Rosendale. In the year 1881 the total of personal property assessed in such town was $5,300, and in 1882 the total amount of personal property assessed was only $800. It would seem to be almost incredible that in a town in which there are many valuable farms, large cement manufacturing establishments, numerous stores and hotels and many well furnished dwelling-houses, that there was no personal property liable to be taxed during one year and so inconsiderable an amount during two other years.

*Second.* The valuation of the property of two corporations, to wit: The Wallkill Valley Railroad Company and the Delaware and Hudson Canal Company, is between one-third and one-half of the entire property of the town. .

*Third.* The records of the county clerk's office of the county of Ulster show sales of real property in the town from 1878 to 1881 aggregating about the sum of $47,575.75. These properties were valued upon the assessment-roll of the year 1880 at $12,950, and in 1881 at $11,725.

*Fourth.* Tenement houses belonging to William Campbell are valued upon the roll of 1880 at $600 and of 1881 at $650. This property is insured for the sum of $2,900 and its rental is $456 per year. Premises belonging to George B. Elting are valued at $550 upon the roll of 1880 and at $700 upon that of 1881. These premises have been mortgaged to secure the sum of $1,500 and are worth about double that amount. A house and premises belonging to Lewis C. Bowen worth

from $3,000 to $4,000 are valued on the roll of 1880 at $550 and upon that of 1881 at $450. A house and premises belonging to Calvin Keator worth in the neighborhood of $2,000 and mortgaged for $1,000, are valued upon the roll of 1880 at $400, and upon that of 1881 at $450. The property of Abram Sammons, consisting of a large hotel building, a blacksmith shop, a large barn, a shed, a three-story brick building, and a frame dwelling-house, worth at least from $10,000 to $12,000, and mortgaged for the sum of $5,500, and insured for $5,000, are valued upon the roll of 1880 at $2,500, and 1881 at $2,400.

It is worthy of note in connection with this property that Nathan Keator, one of the assessors of the town of Rosendale, gave a certificate when an application was made for a loan that a part of this property was worth $12,000.

The house and premises of Dr. Simon Schoonmaker, worth about $3,000 or more, are valued in 1880 at $600 and in 1881 at $500. The premises of James E. Deyo, consisting of a farm of 140 acres, 100 of which are under cultivation and sixty acres bottom lands of the Walkill, with buildings, upon which there is an insurance of $2,500, is valued upon the assessment-roll at $3,250. A farm of Peter E. Snyder, consisting of 101 acres of land, seventy-five of which are cleared, and twenty-six, consisting of timber, with buildings thereon, which are insured for $1,200, is valued upon the assessment-roll of 1880 at $1,900, and upon that of 1881 at $1,800. A farm of Nathan Keator, consisting of 128 acres, and to extinguish a dower right in which he paid to his mother the sum of $6,500, was assessed upon the roll of 1880 at $3,000 and upon that of 1881 at $2,800. A farm of John V. James, consisting of 100 acres and actually sold in the year 1880 at $6,500, was assessed upon the assessment-roll of 1880 at $2,000, and upon that of 1881 at $1,200. The property of Conrad Schinnen, consisting of a three-story brick hotel in the village of Rosendale, a frame building in which there are two stores, with six vacant lots adjoining the hotel of equal size and value, three of which

lots were after the assessment sold for $2,000, is valued upon the roll at the sum of $1,800.

It is impossible, however, to take each piece of property in detail and criticise the assessment made thereon. Those which have been given have been selected at random as showing fairly the rate of valuation adopted in making assessments.

In reaching the conclusion that the property in the town, other than that of the relator and the Delaware and Hudson Canal Company, has not been valued at a sum exceeding forty per cent of its actual value, such conclusion is believed to be liberal towards the town, much more liberal in fact than would seem to be justified by some of the valuations hereinbefore stated. The fact is, as is well known, though not a part of the evidence in the cause, that in a careful estimate made of the whole property in the town of Rosendale, by persons competent for that purpose, for and on the appeal made to the state assessors during the past year, it was ascertained that the valuation of the property upon the assessment-rolls of the town of Rosen. dale, apart and separate from that owned by the relator and the Delaware and Hudson Canal Company aforesaid, was not to exceed thirty-six per cent of its actual value.

The result of my examination of these cases is, that as the property in the town of Rosendale, other than that belonging to the relator and the Delaware and Hudson Canal Company, has not been assessed or valued at a greater sum than forty per cent of its actual value, computed as the statute requires.it to be computed, that the valuation of the property of the relator should be reduced sixty per cent.

There remains one other question to be determined, and that is the question of costs. It is also exceedingly difficult to determine what would be just in that particular. The general presumption of law is, that officers intend to perform their duty honestly and conscientiously, and such presumption can only be overcome by clear evidence. There are isolated cases of valuation upon the assessment-rolls in the town of Rosendale, in which it would seem to be difficult to reconcile

the valuations with a conscientious discharge of duty by the assessors, but in looking at the assessment as a whole, and in view of the fact that the making up of the assessment-rolls involved a difficult question of law for the assessors to decide, to-wit, how should the property of a railroad corporation be valued? in determining which they may have made an honest mistake, I have deemed it better and safer not to reach the conclusion that the assessors acted in bad faith, and therefore to impose upon them the costs of these proceedings.

The orders to be entered in these cases will, therefore, be in accordance with the conclusion above announced, without the imposition of costs upon the defendants.