WALTHAM WATCH AND CLOCK COMPANY *vs.* CITY OF WALTHAM.

Middlesex.     May 13, 1930. — September 10, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Tax*, Abatement, Local. *Practice, Civil*, Complaint for abatement of local tax: commissioner's report, recommittal. *Evidence*, Admissions, Presumptions and burden of proof, Competency, Of fair cash value, Commissioner's report, Res inter alios, Certificate of condition.

The issue, at the hearing by a commissioner of a complaint for the abatement of a local tax assessed to a corporation operating a factory in a city, was confined to the value of two only of nine classes of machinery, denominated the "power plant equipment" and "tools and attachments." The complainant waived so much of the complaint as related to its real estate. The city made no contest as to valuations placed by the complainant on the other seven classes of machinery. There was no agreement that the findings of fact by the commissioner should be final. Upon the filing of his report, a motion by the respondent to recommit it was denied. The complaint then was

heard without a jury by a judge of the Superior Court upon the report, which was admitted subject to the respondent's exception, upon a transcript of all the evidence before the commissioner and upon certain other oral and documentary evidence, which was substantially the same as that before the commissioner. The judge found the facts to be as stated in the commissioner's report and found that the complainant was entitled to an abatement. Upon exceptions by the respondent, it was *held*, that

(1) There was no error in the denial of the motion to recommit: it was addressed to the discretion of the judge who heard it and no abuse of discretion appeared;

(2) The commissioner's report was *prima facie* evidence and was admitted properly: it was not to be excluded even though it contained errors of law or was based upon evidence admitted erroneously, since such errors were subject to correction by the trial judge;

(3) The "machinery account" of a corporation, which, on reorganization, had sold its assets to the complainant, was not admissible in evidence: statements made by another corporation were not admissions binding on the complainant, and, furthermore, it was not evidence of the value of the machinery in issue in the complaint because it was not shown to apply to the same machinery;

(4) A certificate of condition filed with the Secretary of the Commonwealth by the complainant and stating the value of all of its machinery properly was excluded: there being no evidence to show what value was put in such certificate upon the two classes of machinery in issue, no necessary relation between the value of all the machinery and that part which was in issue was shown;

(5) A report by the complainant's president, which stated the value of its "Buildings and machinery," was irrelevant and inadmissible even though the complainant had waived the part of the complaint relating to its real estate, since that waiver was not an admission that the assessed valuation of the real estate was its fair cash value, and also because it did not appear what valuation therein was placed upon the two classes of machinery which alone were in issue;

(6) A circular issued by an investment company for general circulation among investors properly was excluded: the statements therein were not binding on the complainant.

At the hearings of the complaint above described, a question of fact only was involved with regard to the value of certain machinery respecting which the only controversy was as to depreciation, and exceptions by the respondent brought to this court no question of law respecting findings thereon.

There was evidence, at the hearing by the commissioner of the complaint above described, that certain "special" machinery was designed by the complainant and built at its factory; and that the complainant could replace such machinery more cheaply and efficiently than anyone else. Expert witnesses for the complainant testified that, directing their attention to the fair cash value of such machinery, they had appraised that value "upon the basis of reproduction or replacement cost . . . less a reasonable deduction for depreciation"; that, al-

though in most cases replacement cost less depreciation would not be the only measure of fair cash value, they had chosen that measure because, in the particular circumstances, there was no other measure. The expert witnesses for the respondent, although they had adopted the same general measure as the witnesses for the complainant, employed quite a different basis for calculating the cost of replacement. The commissioner found that the methods of valuation adopted by the witnesses for the complainant were proper. *Held,* that

(1) The weight given by the judge of the Superior Court to the findings by the commissioner was not open to review in this court, there being evidence to support the commissioner's finding;

(2) Under G. L. c. 59, § 38, the commissioner's sole duty substantially was to determine the fair cash value of the machinery;

(3) Although replacement costs were emphasized by the various witnesses at the hearing before the commissioner, it could not be said by this court that such costs were allowed to become the sole issue or that they were considered by the commissioner as anything more than aid in the determination of fair cash value;

(4) The fair cash value of the machinery was largely a question of fact; and the commissioner was not in error in adopting the method used by the witnesses for the complainant as the more trustworthy in aiding his determination of fair cash value;

(5) The testimony of those experts warranted a finding by the commissioner that the complainant had sustained the burden of proof resting upon it.

The witnesses for the complainant ascertained the replacement cost of the "special" machinery above described on the basis of the expense to the complainant in itself reproducing the machines and not the expense which a prospective purchaser would incur if he undertook to reproduce the machinery himself instead of purchasing it from the complainant, nor the expense which would be incurred in purchasing it from a manufacturer of machinery. The manner of and reasons for the witnesses' ascertainment were as follows: The cost of labor and materials was computed, to which was added that part of the overhead in the complainant's plant allocated to the manufacture of machinery in its machine shop, which was much less than the overhead chargeable to the cost of machines manufactured in a shop operated for the sole purpose of making machinery for sale. No item of cost for development of the machines was included, since the complainant had in its possession the original patterns and drawings of the machines and the cost of development had been "absorbed years ago in the manufacturing processes." Nothing was added for administration and sales costs, manufacturing profit and interest on capital during construction. *Held,* that, in view of the particular circumstances affecting the complainant's factory, it was not improper for the commissioner to adopt such method of ascertaining replacement costs.

The commissioner in the circumstance above described was not in error in deducting, as depreciation on the "special" machinery, a fixed annual percentage of the cost, there being evidence that, by use of that method, "results are accurate for all practical purposes and are

so conceded by authorities"; and that that method was the only practicable one.

It appeared in the proceedings above described that, when the field work of the complainant's witnesses was performed, all of the machinery installed appeared on their list and was given a replacement value; that later it was ascertained that a considerable part included in the list was obsolete and had been scrapped; and that the commissioner found that the value of this obsolete machinery as it appeared in the original list was deducted from the totals given in the final list. *Held,* that the respondent was not harmed by the failure to give a request, "There is no evidence of any substantial amount of obsolescence in the tools and equipment in complainant's factory which remained after the clearing out of unused machines described in complainant's evidence."

The standard for assessment of taxes established by G. L. c. 59, § 38, to which there must be rigid adherence, is the fair cash valuation of all the real and personal estate subject to taxation; and that standard cannot be varied by public officers or by agreement of parties. Per CARROLL, J.

COMPLAINT for the abatement of a local tax, filed in the Superior Court on February 28, 1925, and afterwards amended.

The complaint was referred to a commissioner, material portions of whose report appear in the opinion. Rulings four, six and seven, requested by the respondent and refused by the commissioner, were as follows:

"4. The replacement cost that may tend to throw light on fair cash value is the cost of replacing the complete machinery of the complainant within a reasonable time, and there is no evidence that the machines could be reproduced in the complainant's machine shop in such a period of time that the cost of replacing them there has any bearing on the fair cash value of the machines."

"6. The 'overhead' expense which would be incurred in replacing the complainant's machines and which is thus one of the factors entering into replacement cost, is the expense which would be incurred by a prospective purchaser who undertook to manufacture the machines or cause them to be manufactured instead of buying them of complainant, and not the overhead expense of complainant's machine shop.

"7. The cost of designing the machines is as much a part of

the replacement cost as the physical labor of constructing them; and if a prospective purchaser of the machinery who undertook to construct the machines instead of buying them of complainant would be obliged to design the machines, the cost of designing is one of the factors entering into replacement cost."

A motion by the respondent to recommit the complaint to the commissioner was denied by order of *F. T. Hammond,* J. The complaint thereafter was heard without a jury by *Greenhalge,* J., who found that the facts were as reported by the commissioner; and found that the complainant was entitled to an abatement in the sum of $38,394.55 with interest. The respondent alleged exceptions.

*P. Nichols,* for the respondent.

*J. L. Hall & R. Proctor,* for the complainant.

CARROLL, J. This is a complaint under G. L. c. 59, § 65, by way of appeal from the refusal of the assessors of Waltham to abate a tax assessed in the year 1924 upon real estate and machinery of the Waltham Watch and Clock Company. The case was referred to a commissioner. The complainant waived so much of the complaint as related to its real estate. The machinery was divided into nine classes. No contest was made by the city of seven of these classes as valued by the experts called by the complainant. The controversy concerned only the fair cash value of the "power plant equipment" and "tools and attachments." Under the classification "tools and attachments" were included all machinery directly used in the product of the plant and all machinery in a machine shop connected therewith. The seven items eliminated were the motors and power wiring, piping, shafting, fire prevention system, heating and lighting systems and elevators.

The commissioner filed his report. The city made a motion to recommit the report; it was denied. Exceptions were filed to this ruling. The case then came on for hearing. The commissioner's report was offered by the complainant; this was objected to by the city. The judge admitted the report against the defendant's objection. The case was then heard on certain oral and documentary testi-

mony.  No evidence different from that before the commissioner was offered.  It was agreed that the case was to be heard "upon all the evidence offered and admitted before the commissioner, as the same appears in the report of the evidence."  The judge found the facts to be as reported by the commissioner and denied the city's requests.  He found that the complainant was entitled to an abatement in the sum of $38,394.55 with interest from October 31, 1924.

1.  The motion to have the report of the commissioner recommitted was denied properly.  The alleged errors were subject to correction at the hearing on the case before a judge of the Superior Court.  This motion was addressed to the discretion of the judge; there was no abuse of discretion in denying it.  *Tobin* v. *Kells*, 207 Mass. 304.  *Director General of Railroads* v. *Eastern Steamship Lines, Inc.* 245 Mass. 385, 397.  The findings of fact were not to be final, as in *Pettey* v. *Benoit*, 193 Mass. 233.

2.  The commissioner's report when offered was objected to by the city.  It was admitted properly.  It was *prima facie* evidence.  If it contained errors of law or was based upon evidence erroneously admitted, the errors could be corrected by the judge, but the report should not be excluded.  *Collins* v. *Wickwire*, 162 Mass. 143.  *Jean* v. *Cawley*, 218 Mass. 271.  *South Lancaster Academy* v. *Lancaster*, 242 Mass. 553, 555.

3.  At the hearing in the Superior Court the city offered certain evidence which was excluded.  This evidence was offered before the commissioner and by him excluded.

The city offered the machinery account of the former Waltham Watch Company of 1922, showing that its machinery account on February 9, 1923, was $4,141,369 and that no machinery was removed between February 9, 1923, and April 1, 1924.  The Waltham Watch Company was reorganized in 1923.  Its assets were sold to a new corporation which ultimately took the same name as the old company.  The statement of another corporation was not an admission against the complainant.  There is nothing in *Abbott* v. *Walker*, 204 Mass. 71, in conflict.  In that

case the declarations of a former owner of land while upon the premises were held to be admissible. The evidence offered was the "machinery account" of the old company. The machinery with which the commissioner was dealing was the "machinery used in manufacture" and more particularly the "power plant equipment" and "tools and attachments." The so called "machinery account" of the old company was not connected up with the machinery used in manufacture by the new company on April 1, 1924. The value therefore of the machinery, as stated in the machinery account of the old company, would not be evidence showing the fair cash value of the particular machinery in use for manufacture on April 1, 1924, by the new company. There was nothing in the method adopted by the commissioner in arriving at the fair cash value which made this evidence admissible.

The defendant also offered the certificate of condition of the complainant on March 31, 1924. It contained the item "Machinery $3,214,518." This item purported to cover all the machinery of the corporation whether idle or in use, as well as the tools and other equipment and machines used in processes not strictly manufacture. See *Wellington* v. *Belmont,* 164 Mass. 142; *Coffin* v. *Artesian Water Co.* 193 Mass. 274. The evidence was excluded. The defendant excepted. There is no necessary relation between the value of all the machinery and that part of the machinery which the commissioner was considering. A certificate of condition is ordinarily admitted in evidence as an admission by the corporation of the value stated although it is not conclusive. *Brackett* v. *Commonwealth,* 223 Mass. 119. But the certificate shed no light on the fair cash value of the machinery actually used in manufacture on April 1, 1924, especially when it was not shown what relation this item bore to the tools and attachments and power plant equipment. This evidence was excluded properly.

The defendant offered the president's report to stockholders and balance sheet of December 31, 1923. The balance sheet contained the item "Buildings and machinery

$4,338,860." This was excluded. For the reasons already stated the report and balance sheet were not admissible. There is nothing to indicate what part of the machinery was used in manufacture and the value of the land is a part of the item. The fact that the complainant waived so much of its complaint as alleged that it was aggrieved by the valuation of the real estate is not an admission that the assessed valuation was the fair cash value of the real estate. The item combining machinery and real estate would not help the commissioner in deciding the question before him.

The defendant sought to introduce a circular from F. S. Mosely and Company, stock and bond brokers, dated February 19, 1923. The circular was issued for general circulation among investors. The statements in this circular did not bind the complainant: it was in no way responsible for the recitals made without its authority. *Welch* v. *McNeil*, 214 Mass. 402, 406, relied on by the defendant, is not in conflict.

4. The defendant excepted to the adoption by the judge of the commissioner's rulings and to his denial of requests for rulings. The commissioner's report shows careful consideration of all the evidence. At the hearing in the Superior Court the complainant rested its case after presentation of the report. It was found by the commissioner that the complainant was entitled to an abatement of $38,394.55. The judge found for the complainant for this amount with interest. At the hearing before the judge, in addition to the report, the transcript of the evidence before the commissioner was admitted by agreement; certain oral evidence was also heard, which was in substance the same as that heard by the commissioner. Upon exceptions to this court after the hearing by the judge of the Superior Court, in the circumstances, the weight given by the judge to the findings of facts by the commissioner is not open to review, there being evidence to support the commissioner's findings; the only questions to be considered were upon rulings of law made by the judge of the Superior Court. *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257, 260.

The evidence as to the fair cash value came from experts. The experts for the complainant were Charles T. Main and members of his organization. One Bryan was assigned to the power plant equipment and John H. Waterman to tools and attachments. The respondent's experts were Walter A. Hall, who testified as to the tools and attachments, and William D. Ennis, who testified to power plant equipment and tools and attachments. The complainant's experts testified that the fair cash value of the power plant was $98,400. They reached this conclusion by showing the replacement cost new of each machine and deducting four per cent a year for depreciation, wear and tear, and obsolescence, but in no case was a machine "depreciated more than 80%." The commissioner found that the method adopted by the complainant's experts "was usual and proper"; that a "depreciation of 70+% made by Main and Bryan was somewhat excessive"; that "not over 60% should be deducted"; and that the fair cash value of the power plant equipment on April 1, 1924, was $133,598.

As to the classification "tools and attachments": this included all of the machinery directly used in the product of the plant and the machinery in the machine shop connected. Some of the machines were "standard," that is, machinery purchased from manufacturers; other machines were "special," that is, machines made in the machine shop of the old corporation. As to the "standard" machines, the "replacement cost new" as testified to by the complainant's experts was agreed to by the city's experts. The only issue as to this "standard" machinery was the amount of depreciation. There was no controversy as to the age of any of it. The question here involved was a question of fact.

The main controversy centered about the replacement cost new and the fair cash value of the "special" machinery. Although nearly all of the "special" machinery was made as above stated, some of it was similar in character to machines which could have been purchased. As to this part Waterman obtained the replacement costs from manufacturers. As to the specially designed machines which

were made by the company, Waterman, in order to estimate the replacement cost new, computed the number of hours of labor which would be required on April 1, 1924, to manufacture each machine; and, in addition to labor cost, added overhead expenses and cost of material. All of this was on the assumption that the machines would be built at the company's machine shop. In making the computation Waterman used cards showing labor and material costs. The commissioner in discussing this aspect of the case gives a detailed account of the method pursued by the company's experts.

In his opening at the hearing in the Superior Court, counsel for the complainant stated that the principal evidence to be offered in its behalf was an appraisal by Main made "upon the basis of reproduction or replacement cost, as of April 1, 1924, less a reasonable deduction for depreciation." This witness after qualifying as an expert (which we interpret in this connection to mean one having special learning and experience enabling him to testify as to the fair cash value of the property in question) stated that he made such an appraisal, that it was prepared upon the basis of replacement or reproduction cost less observed depreciation, and that "an estimate representing his opinion of the replacement cost of the machinery, less depreciation, represented the maximum fair cash value of the machinery." Reference to cash value was made several times in various forms. He stated further as reasons for adopting this method that there were no sales of similar property, that the complainant had recently gone through a reorganization and hence value based on profits was not available, and that he was not able to get competition with other plants of a similar nature as a basis of valuation. Manifestly the trial on behalf of the complainant proceeded on the footing of fair cash value, and Main testifying to this point did not attach any theoretical or abstract meaning to replacement or reproduction cost but used elements, factors and methods reflecting his own opinion as shown by his testimony in detail. Counsel for the respondent in his opening in the Superior Court stated

that the city would follow the assumption of the complainant that the fair cash value was the replacement cost with a reasonable allowance for depreciation. The witnesses called on behalf of the city employed a quite different basis for calculating the replacement cost from that adopted by the witnesses for the complainant. Thus the parties did not agree as to the proper method of estimating replacement cost. It is apparent that, although they used the same words, they did not use them in the same sense or as having a fixed legal meaning. Each party attached its own signification to these words as a basis for reaching the ultimate result of fair cash value. In these circumstances no fixed meaning can be attached to the words as binding upon both parties.

The respondent contended that replacement cost at the complainant's factory could not be used in determining the fair cash value; that the overhead expense was improperly computed; that the cost of designing should have been included as well as the commercial cost and the contractor's profit. The complainant's witnesses testified that replacement cost was the amount it would cost the company to replace the machines in its own shop, including labor and cost of materials, and the overhead which would be charged to watch making machinery built by the company. These witnesses did not include the cost of development for the reason that, in the early stages, cost of development is a part of the value of the machine "but in replacing machines later, it does not enter into the cost of replacement"; that if it were desired to build one of these machines the patterns and drawings, if in existence, could be used without extra expense for development cost. There was evidence that as to much of the specially constructed machines "nobody else in the world . . . could replace those machines as cheaply and efficiently as . . . [the complainant] could." It further appeared that, in the opinion of the complainant's witness, while in most cases replacement would not be the only measure of fair cash value, "It was chosen here because there was not any other measure that could be used in this particular case"; that in reference to the extent of depreci-

ation, each machine was examined, and its age taken into account; that the so called straight line method of depreciation was used, deducting a certain percentage each year — four per cent each year for the power plant and three per cent for tools and attachments.

The commissioner found that the company had detailed drawings from which most of the machinery could be rebuilt; that in so far as it was a question of fact, from the facts and the evidence before him, the method adopted by the company's experts was proper under the circumstances of the case; that nothing should be added for development, administration and sales costs, manufacturing profit and interest during construction. As we have said, the findings of facts by the commissioner cannot be reviewed by this court in the circumstances. The commissioner was to determine the fair cash value of the property in question on April 1, 1924. He could decide as matter of fact whether the method adopted by the experts of the company was more trustworthy than the method used by the city's experts; and, as matter of fact, he could use the method of the complainant as an element in finding the fair cash value. There was no error of law in the course pursued by the commissioner. He made his findings of fact and gave his reasons for acting as he did.

Most of the respondent's requests present questions of fact. The third request before the commissioner — the fourth request before the judge — was, "The replacement cost that may tend to throw light on fair cash value is the cost which a prospective purchaser would incur if he undertook to reproduce the machinery instead of purchasing it from the complainant, and not what it would cost the complainant to reproduce the machinery itself." The commissioner on the evidence before him could find that the cost to the complainant of reproducing the machinery itself was a proper way to determine replacement cost and could be used if found to be reliable. The evidence showed that the replacement of many of the machines could be done by no one as efficiently and cheaply as the company could itself do this work; that in this case, replacement cost

at the company's factory, less depreciation, was the proper measure to be adopted. Believing this evidence, as the commissioner did, he refused properly to give the third request and the judge was right in denying it.

The commissioner finding that the replacement cost at the complainant's factory was a proper element to be considered in determining the fair cash value, under all the facts shown, he was not as matter of law required to rule as requested. The commissioner ruled that "The fair cash value of the machinery is not over what it would cost the complainant or a similar company to replace the various items of machinery itself in the same way in which the machines were originally built"; that "The complainant's evidence of replacement cost, that is, the cost of replacing the machines by the company itself or a similar company in the same way as the machines were built, represents the maximum fair cash value"; that "In this case the cost of replacing the entire machinery of the complainant by purchase from a machinery manufacturer is not a test of fair cash value"; that "When the subject of valuation is the machinery alone and the . . . items . . . can be replaced in the company's . . . shop or a similar shop . . . the profit of a factory building machines for sale is not a proper element in computing the replacement cost which sheds light on the fair cash value for purposes of local taxation"; and that "When the subject of valuation is the machinery alone and the various items of machinery can be replaced in the company's machine shop or a similar shop . . . . administration and sales costs of a factory building machines for sale is not a proper element in computing the replacement cost which sheds light on the fair cash value for purposes of local taxation."

There was no error in denying the requests of the respondent before the commissioner numbered four and six. Some of the machines were thirty or thirty-five years old, and there was evidence that the complainant had the facilities for an orderly businesslike replacement of the machines as they gradually became superseded or worn out. Upon the facts found the overhead expenses in the

company's plant allocated to the manufacture of machines in its machine shop were properly taken into account. On the question of overhead expenses, there was evidence from one of the company's experts that his calculations were based on the fact that the complainant had adequate tools, equipment and organization to build the machines as required "in the systematic orderly sequence"; that full factory overhead was not a factor. The commissioner found that the overhead properly chargeable to the cost of the machines as built in the complainant's machine shop was much less than the overhead chargeable to the cost of machines manufactured in a machine shop which was operated for the sole purpose of manufacturing machinery for sale. In our opinion there was no error of law in the amount charged for overhead. The rulings on the cost of designing covered by the seventh request were correct: the patterns and drawings for a large part of the machines were in the possession of the complainant. Development and engineering expenses may be of importance in ascertaining the fair cash value, and if such work is necessary it is an element to be considered in reproduction cost. See *Ohio Utilities Co.* v. *Public Utilities Commission of Ohio*, 267 U. S. 359. But these expenses in the case before us, as expressed by one witness, "have been absorbed years ago in the manufacturing processes," and if the company desired to replace any of these machines "all it had to do was to get out the patterns and drawings, if they had any, and build the machines without any extra expense for development cost." There was further evidence that in replacing these machines by the company the cost of development did not enter into the cost of replacement. The commissioner found that the company had detailed drawings from which most of the machinery built in its machine shop could be rebuilt. He ruled on the facts that development cost, that is the cost of designing, making drawings and doing work preliminary to the actual construction, was not a part of the replacement cost "of the physical asset, machinery." We find no error in this ruling.

There was no error in refusing to give the other requests

of the respondent. One of these requests involved the question of interest on capital during the construction period as a factor entering into replacement cost. The real issue in the case was the fair cash value of the machinery. If a plant is to be entirely reproduced, money is unproductive during the work, and the loss of return on idle money may be a part of the cost of construction. But that this is not the question here was recognized by the commissioner: he said, "As this machinery was gradually built in the company's machine shop, there was no such period." The machinery was valued as a separate asset of an operating business that was earning all the time, and the replacement was to be made by the use of working capital on which returns could be made. The commissioner was not required, as matter of law, in deciding the question of the fair cash value on the evidence before him to include interest. In many cases interest is a proper item to be considered. The defendant cites on this point a number of cases, which we do not think it necessary to review. Many of them are rate cases, where the reconstruction value of the entire plant was to be taken into account. In the case at bar, on the peculiar facts involved, the nature of the property and all the circumstances, it was not essential that interest should be included. In addition to this, the commissioner found that it was now possible to purchase in the open foreign market from one fourth to one half of the machines built by the company and that the cost of such machines already purchased was less than the estimate of replacement cost.

Objection is made to the straight line method of a percentage deduction for a number of years. Here again the commissioner relied on the company's experts. As stated by one witness: by use of the "straight line method," "results are accurate for all practical purposes and are so conceded by authorities." "A fixed annual percentage on the cost of material structures for depreciation, as a charge against profits, has come to be recognized business policy." *Lapham* v. *Tax Commissioner*, 244 Mass. 40, 45. This rule was approved in *Boston & Albany Railroad* v. *New York Central Railroad*, 256 Mass. 600, 613. The

straight line method is not always accurate; at best it is only an estimate and is not to be applied in all cases. But when, as here, there is reliable and trustworthy evidence that it is the only practicable method to be adopted, there was no error of law in using it as bearing on the question of depreciation as a step in deciding the fair cash value of the machinery.

The commissioner ruled, in effect, that the fair cash value was not more than it would cost the company or a similar company to replace the machinery in the same way in which the machines were originally built; that in this case the administration and sales costs of a factory building machines for sale are not proper elements in computing replacement cost, when the machinery can be replaced in the company's machine shop or in a similar shop of a similar manufacturing company. As applied to the evidence and facts in the case at bar and the way in which it was tried on both sides, there was no error in this.

The respondent contends there was error in the manner in which the commissioner dealt with obsolete machinery. When the field work of the complainant's witnesses was performed, all of the machinery installed appeared on their list and was given a replacement value. Later it was ascertained that a considerable part included in the list was obsolete and had been scrapped. The commissioner found that the value of this obsolete machinery as it appeared in the original list was deducted from the totals given in the final list. We are of opinion that the respondent was not harmed by the failure to give the request "There is no evidence of any substantial amount of obsolescence in the tools and equipment in complainant's factory which remained after the clearing out of unused machines described in complainant's evidence."

In conclusion, the commissioner in determining the fair cash value of the property was dealing with a practical question; it was largely a question of fact. He could find that the burden of proof had been sustained by the complainant. Experts were called on each side. He found that the method and manner of the company's experts were

to be followed. He believed their testimony as far at least as their method was concerned, relying on their evidence. Considering all the special facts involved in this particular case, there was no error of law by the commissioner or by the judge. As we have said, we do not think it necessary to review the decisions cited by the respondent; we do not consider them in conflict with what is decided here. Value for one purpose is not always the test of value for other purposes and value for rate purposes is not necessarily to be applied in estimating fair cash value for taxation purposes. In determining the fair cash value of machinery under the tax statute, we do not decide that the element of cost to the complainant making the machines in its own machine shop is the true test of reproduction value in all cases. But in the case at bar upon all the facts, considering the nature of the machinery, the use to which it was put, the possession of plans and designs for its construction, and the evidence bearing on all the circumstances, we are unable to find any error in the course pursued by the commissioner and approved by the judge of the Superior Court.

The standard for assessment of taxes established by G. L. c. 59, § 38, is the fair cash valuation of all the real and personal estate subject to taxation. That standard cannot be varied by public officers or by agreement of parties. *Southborough* v. *Boston & Worcester Street Railway,* 250 Mass. 234, 239. There must be rigid adherence to that standard. *Massachusetts General Hospital* v. *Belmont,* 233 Mass. 190, 205–208. *S. C.* 238 Mass. 396, 402. *Tremont & Suffolk Mills* v. *Lowell,* 271 Mass. 1. The opinion evidence appears to have been directed to that end and hence might have formed a basis for decision so far as deemed credible. Although in the trial reproduction costs as interpreted by the several witnesses were emphasized, we think it cannot be said rightly that such costs became the main issue and decisive test or that they were used as anything more than as an aid to the ascertainment of fair cash valuation.

*Exceptions overruled.*