ASSESSORS OF QUINCY *vs.* BOSTON CONSOLIDATED GAS
COMPANY.

Suffolk.   November 16, 1938. — May 26, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Tax,* On personal property: assessment, list. *Value. Evidence,* Of value,
Relevancy, Presumptions and burden of proof. *Gas Company. Appellate Tax Board. Error,* Whether harmful.

In a determination of the fair cash or market value for taxation of meters
and a system of underground distributing pipes of a gas company, the
Appellate Tax Board properly refused to base its valuation solely on
reproduction cost less depreciation and obsolescence and properly
admitted and considered evidence of the earning capacity of the
system in conjunction with other factors.

Evidence of the expense of replacing street pavement as an element of
reproduction cost of underground distributing pipes of a gas company
was speculative and properly was excluded in determining the value of
the property for taxation.

A list of taxable property filed in good faith by a gas company under
G. L. (Ter. Ed.) c. 59, § 29, as amended, was not invalid merely
because of comparatively slight inaccuracies in stating the quantities
of its pipes and meters.

A taxpayer filing a list under G. L. (Ter. Ed.) c. 59, § 29, as amended,
on a form prescribed by the commissioner of corporations and taxation under c. 58, § 5, need not state the values of the property listed
even though the form contained a column for a statement of values
and certain instructions with respect thereto.

Whether or not evidence of the earnings of other gas companies should
have been admitted in determining the value of a gas company's
property for taxation, its admission in the circumstances was not
reversible error.

A tribunal determining the market value of tangible property upon evidence presenting various valuations based on different permissible
theories of valuation need not accept any one of such valuations but
may find a valuation of its own based on all the evidence.

APPEAL from a decision by the Appellate Tax Board.

*F. D. Coffman,* for the assessors of Quincy.

*J. S. Eastham, (C. R. Walton* with him,) for the taxpayer.

RONAN, J.   This is an appeal, by the assessors of Quincy,
from a decision of the Appellate Tax Board granting a par-

tial abatement of taxes assessed for 1935 on certain personal property of the Boston Consolidated Gas Company, a domestic corporation, engaged in the manufacture, purchase, distribution and sale of gas in Boston and in various cities and towns including Quincy.

The Boston Consolidated Gas Company, hereinafter called the company, manufactures a considerable quantity of gas at its plant in Everett but it purchases the greater portion of the gas that it sells to its customers. The gas is conveyed by pipe lines to the various districts that the company serves, where, by means of connections with these pipes, the gas is distributed and sold to its customers. The mains supplying gas to Quincy run through other municipalities. The company owns gas holders and other equipment necessary for the operation of this distributing system. It maintains service stations and sales offices in the territory in which its gas mains are located. Its principal office is located at Boston, where a large clerical staff is employed.

The business in Quincy was acquired by the company in 1928 in exchange for its stock, of the par value of $1,568,000, which it gave to the Massachusetts Gas Companies. At that time the Massachusetts Gas Companies owned the capital stock of both the seller and purchaser.

The taxable personal property in Quincy on January 1, 1935, consisted principally of street mains, service connections and customers' meters. There was also a small amount of other property comprising street lighting, boiler plant, garage and yard equipment. The company seasonably filed a list of its taxable property, which included nine hundred forty-seven thousand one hundred ninety-seven feet of gas mains, sixteen thousand six hundred fifty-five feet of service connections, twenty thousand eight hundred thirty-one meters, and the miscellaneous property above mentioned. This list, however, contained no estimate of the value of any of the property. It appeared at the hearing before the board that the company owned two thousand sixty-one feet of mains, and thirty-five feet of service connections in excess of the quantities stated in the list, and that it had six meters less than the number reported in the list. The board found

that the company believed at the time it prepared and filed the list that it was accurate; that it was filed in good faith; that the variations between the amounts mentioned in the list and the actual quantities were small; that the list was accepted by the assessors without further inquiry of the company; and that, so far as it was a matter of fact, the list was sufficient.

The dispute between the parties centers upon the fair cash value of the property. There was evidence that the reproduction cost less depreciation was $2,609,776, according to the testimony introduced by the company, and $3,379,432, according to that introduced by the assessors. The value of this property was carried in the books of the company as $2,221,789.71, but this was based not on actual cost but on an apportionment of the entire property of the company plus additions made since 1931 to the Quincy branch. There was other testimony to the effect that the book value if properly computed would amount to $2,031,904.99 or $2,621,673. The gross income received by the company in 1934 from its business in Quincy was $614,776.82. The expenses incurred in conducting this business were not segregated in the books of the company, and various methods of allocating the expenses to it were introduced in evidence in order to determine the net income of the Quincy branch. There was testimony that the most reliable method was to consider the actual expenses where they were known, and to apportion the other expenses properly allocable in part to the Quincy business, each item of these expenses being apportioned according to the method best suited to correspond with actual conditions in Quincy. In some instances these expenses were apportioned in the ratio that the number of meters in Quincy bore to the total meters in use by the company, and in other instances in the ratio that gross sales in Quincy bore to total gross sales of the company. The deduction of such expenses was in accordance with the classification of accounts prescribed by the department of public utilities. The net income of the Quincy business in 1934, as thus computed, was $110,421.85, but would be $140,994.15 if the property was assessed upon a valuation

of $1,394,685. The capitalization of these estimated net earnings at seven and one half per cent would show a valuation (after deducting real estate, nontaxable personal property, working capital and going concern value — all amounting to $485,239) of $1,394,685 for the personal property now in question.

The board, upon a consideration of all the evidence, including testimony of increasing competition of other fuels for heating and cooking, general business conditions, the regulation of the gas industry by the Commonwealth and the locality where the business was conducted, found that the fair cash value of the property on January 1, 1935, was $1,750,000 and not $2,425,000 as determined by the assessors. It found that the company was entitled to an abatement of $23,220.

The principal contention of the assessors is that the board erred in ruling that evidence of net income was admissible upon the question of the fair cash value of the property and in considering this evidence in ascertaining the valuation of the property. They also contend that the list of its taxable property filed by the company was insufficient because it did not state the value of the property enumerated in the list and that, consequently, the board had no jurisdiction to hear an appeal from the refusal of the assessors to abate the tax.

The tax base is the fair cash value of the property. Fair cash value in our taxing statutes has been construed to mean fair market value, which is the price that an owner willing but not compelled to sell ought to receive from one willing but not compelled to buy. *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 262. *Massachusetts General Hospital* v. *Belmont,* 233 Mass. 190, 206. *Revere* v. *Revere Construction Co.* 285 Mass. 243, 247. *Amory* v. *Assessors of Boston,* 306 Mass. 354. *Commissioner of Corporations & Taxation* v. *Worcester County Trust Co.* 305 Mass. 460. It is a standard that is easily understood. It is employed not only for the purpose of taxation but also, ordinarily, in awarding compensation for property taken by eminent domain, and to a greater or less extent in establish-

ing the rates to be charged by public utilities for the services rendered by them to the public. *Boston Chamber of Commerce* v. *Boston,* 195 Mass. 338, affirmed 217 U. S. 189. *Perley* v. *Cambridge,* 220 Mass. 507, 512, 513. *Smith* v. *Commonwealth,* 210 Mass. 259. *West* v. *Chesapeake & Potomac Telephone Co. of Baltimore,* 295 U. S. 662, 671. *Great Northern Railway* v. *Weeks,* 297 U. S. 135, 139.

It was the duty of the board to find the fair market value of the property. All the uses for which the property was adapted could be shown and, while its value for any special purpose was not the test, the board in ascertaining its market value could consider such a purpose together with any other use to which the property might be profitably put. *Maynard* v. *Northampton,* 157 Mass. 218, 219. *Holyhood Cemetery Association* v. *Brookline,* 215 Mass. 255, 256. *Lodge* v. *Swampscott,* 216 Mass. 260. *Meisel Press Manuf. Co.* v. *Boston,* 272 Mass. 372. *Olson* v. *United States,* 292 U. S. 246.

The rental value of land is competent as showing its market value, *Lincoln* v. *Commonwealth,* 164 Mass. 368; *Ryder* v. *Lexington,* 303 Mass. 281, 291, 292, although its earning capacity rather than its actual income would seem to be more appropriate for this purpose. *Boston Belting Co.* v. *Boston,* 183 Mass. 254. *Donovan* v. *Haverhill,* 247 Mass. 69. *Harris Trust & Savings Bank* v. *Earl,* 26 Fed. (2d) 617. *Somers* v. *Meriden,* 119 Conn. 5. *Central Maine Power Co.* v. *Turner,* 128 Maine, 486. And the capacity of the land to produce income may be shown by the character and extent of the use for which it has actually been employed. *Pegler* v. *Hyde Park,* 176 Mass. 101, 102. *Wellington* v. *Cambridge,* 220 Mass. 312, 318. *Vineyard Grove Co.* v. *Oak Bluffs,* 265 Mass. 270, 278. But the general rule is that the profits from a business located upon the land are not a fair measure of the value of the land because the financial returns from a commercial undertaking are dependent upon so many material factors having no real relation to the land itself that the profits cannot be said to be derived from the land. *Whitman* v. *Boston & Maine Railroad,* 3 Allen, 133, 142. *Cobb* v. *Boston,* 109 Mass. 438. *Whiting* v. *Commonwealth,* 196 Mass. 468, 470. *Brackett* v. *Commonwealth,* 223

Mass. 119. *Powers* v. *Rittenberg*, 270 Mass. 221, 224. This general rule ought not to be relaxed except in those comparatively rare instances where the profits in the main result from some peculiar characteristic of the land, *Revere* v. *Revere Construction Co.* 285 Mass. 243, and where the exclusion of such evidence would virtually deprive one of proving the fair market value of his land. See *Beale* v. *Boston*, 166 Mass. 53; *Cochrane* v. *Commonwealth*, 175 Mass. 299.

The subject of the tax is a network of underground pipes used by the company in delivering gas to its customers. There is nothing in the record to indicate that this distributing system could be used for any other purpose and there is nothing to show that, if operation of the system were discontinued, these pipes would have any removal value, although the meters located upon the premises of the customers might have some value if they were disconnected and repossessed by the company. The property was adapted to a single use and its value depended entirely upon a continuance of that use. It would therefore be difficult properly to appraise its value without considering its use, which was the only element that gave it whatever value it had. The absence of sales of similar property deprived the assessors of resorting to current market prices. Here the company did not have the right of sale that ordinarily attaches to ownership. It could not sell this distributing system and deprive itself of its power to perform its public duties without legislative sanction. G. L. (Ter. Ed.) c. 164, § 21. *Richardson* v. *Sibley*, 11 Allen, 65, 70. *Clemens Electrical Manuf. Co.* v. *Walton*, 173 Mass. 286; *S. C.* 206 Mass. 215. *Attorney General* v. *Haverhill Gas Light Co.* 215 Mass. 394. *Attorney General* v. *Boston & Albany Railroad*, 233 Mass. 460. And if a sale were effected the right of the purchaser to maintain the mains in the highways would be subject to limitations that have frequently been declared by this court. *Natick Gas Light Co.* v. *Natick*, 175 Mass. 246. *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397. *Boston Electric Light Co.* v. *Boston Terminal Co.* 184 Mass. 566. *Cheney* v. *Barker*, 198 Mass. 356. *New York, New Haven & Hartford Railroad* v. *Cohasset Water Co.* 216

Mass. 291. *New York Central & Hudson River Railroad* v. *Central Massachusetts Electric Co.* 219 Mass. 85. *Opinion of the Justices,* 297 Mass. 559.

The market value of this kind of property must be ascertained from a consideration of all the factors that ought to influence the judgment of a seller and a buyer in reaching a fair price. The capacity of the distributing system to operate at a profit would be a matter of importance to those who ordinarily invest in such enterprises. The cost, age and condition of the system and the present and probable demand for gas in the locality would also be elements that would be reflected in the fair selling price of the property. The assessors apparently based their valuation on reproduction cost, but it does not appear that they made any allowance for depreciation. Reproduction cost, less accrued depreciation and a reasonable deduction for obsolescence, is a recognized method of approximating more or less closely the market value. *Stein* v. *Strathmore Worsted Mills,* 221 Mass. 86, 89, 90. *Boston & Albany Railroad* v. *New York Central Railroad,* 256 Mass. 600, 613. *Waltham Watch & Clock Co.* v. *Waltham,* 272 Mass. 396, 410, 411. This method is neither inclusive nor exclusive. The present market value of the distributing system might be more or less than its reproduction cost less an allowance for depreciation and obsolescence. The market value of a fully equipped street railway system situated in an area where adequate service is supplied by automobile buses could hardly be said to be its reproduction cost. On the other hand, a short line of railroad connecting two great railroad systems might well be worth more than its reconstruction cost. There was no error in the refusal of the board to base its valuation entirely upon reproduction cost, less depreciation and obsolescence, as urged by the assessors. That method of valuation was only a guide to assist the board in arriving at a reasoned conclusion in which all the pertinent factors were given their appropriate weight. Valuation by the reproduction cost method is not a formula to be rigidly applied in every case, and it would not warrant the board in excluding other elements materially affecting the valuation of the property. "Original cost with deduc-

tions, if any, for depreciation, replacement cost and productive power are all legitimate elements bearing upon true value, but no one of them is decisive." *Essex Co.* v. *Lawrence,* 214 Mass. 79, 89. *Massachusetts General Hospital* v. *Belmont,* 238 Mass. 396, 402. *Waltham Watch & Clock Co.* v. *Waltham,* 272 Mass. 396, 412. *McCardle* v. *Indianapolis Water Co.* 272 U. S. 400. *Los Angeles Gas & Electric Corp.* v. *Railroad Commission of California,* 289 U. S. 287. *Dayton Power & Light Co.* v. *Public Utilities Commission of Ohio,* 292 U. S. 290. *Rowley* v. *Chicago & Northwestern Railway,* 293 U. S. 102, 109. *Kennebec Water District* v. *Waterville,* 97 Maine, 185. *Grafton County Electric Light & Power Co.* v. *State,* 78 N. H. 330.

The board properly took into account the financial returns that had been realized from the use of the property. It could be found to be one of the controlling inducements in settling a fair price for the purposes of sale. We cannot say there was error in ascertaining the earning capacity of this underground system for the distribution and sale of gas and capitalizing the earnings at the proper rate, and in weighing, checking and balancing the result so obtained with the other valuations appearing in the testimony. The board was right in not basing its determination of value upon capitalization of earning capacity alone. *Essex Co.* v. *Lawrence,* 214 Mass. 79, 89. *Nashville, Chattanooga & St. Louis Railway* v. *Browning,* 310 U. S. 362. Evidence of valuation based upon the capitalization of earnings has been held competent on the question of the market value of somewhat similar property in assessing taxes, establishing rates and awarding damages in eminent domain cases. *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312. *Cleveland, Cincinnati, Chicago & St. Louis Railway* v. *Backus,* 154 U. S. 439. *Southern Railway* v. *Kentucky,* 274 U. S. 76. *United States* v. *Boston, Cape Cod & New York Canal Co.* 271 Fed. 877. *Chicago & Northwestern Railway* v. *Eveland,* 13 Fed. (2d) 442. *Detroit* v. *Detroit & Canada Tunnel Co.* 92 Fed. (2d) 833. *Southern California Edison Co. Ltd.* v. *Railroad Commission of California,* 6 Cal. (2d) 737. *State* v. *Suffield & Thompsonville Bridge Co.* 82 Conn. 460. *State*

v. *Illinois Central Railroad,* 27 Ill. 64.   *People* v. *St. Louis,* 367 Ill. 57.   *Alpena Power Co.* v. *Caledonia Township,* 194 Mich. 622.   *Atlantic & St. Lawrence Railroad* v. *State,* 60 N. H. 133.   *State* v. *Virginia & Truckee Railroad,* 23 Nev. 283.   *State* v. *Nevada Central Railroad,* 28 Nev. 186.   *People* v. *Keator,* 67 How. Pr. 277.   *People* v. *Hicks,* 40 Hun, 598, 601.   *State* v. *Halliday,* 61 Ohio St. 352.   *Montgomery County* v. *Schuylkill Bridge Co.* 110 Penn. St. 54.   *Harrisburg, Carlisle & Chambersburg Turnpike Road Co.* v. *Cumberland County,* 225 Penn. St. 467.   *Chicago & Northwestern Railway* v. *State,* 128 Wis. 553.   *Wisconsin Gas & Electric Co.* v. *Tax Commission,* 221 Wis. 487.

The assessors, in contending that evidence of earning capacity ought not to have been admitted, rely upon *Newburyport Water Co.* v. *Newburyport,* 168 Mass. 541, and *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365. But the determination of the value of the property of the water companies, which were purchased by the cities in the cases cited, depended upon the construction of statutes, each of which provided that the city should pay "the fair value of said property for the purposes of its use by said city . . . without enhancement on account of future earning capacity or good will, or on account of the franchise." See St. 1894, c. 474, § 1; St. 1895, c. 451, § 16. Neither city was purchasing in order to make profits, and the price to be paid was the value of the property for the purpose for which it was to be used by the city. A valuation limited to what it is worth to the purchaser or taker is not market value. *Sargent* v. *Merrimac,* 196 Mass. 171.   *United States* v. *Chandler-Dunbar Water Power Co.* 229 U. S. 53.   *New York* v. *Sage,* 239 U. S. 57. In the *Newburyport* case it was stated by Holmes, J., at pages 554, 555: "Had the evidence [of earnings] been admitted, it is improbable that we should have recommitted the report on that ground. We are not disposed to recommit it because the evidence was excluded. . . . At all events, the different conditions under which the property would be used by a municipal corporation seeking only reimbursement, not profit, so diminish the instructiveness of the figures offered that, even if admissible, we think

that they ought not to have affected the result." In the instant case, there is no statute furnishing the method by which the value for assessment of the annual tax should be determined, and its value was what it would bring on the market for the purposes of sale. It is distinguishable from the two cases upon which the assessors rely, because in both of them the municipality was authorized to set up its own system or to purchase an existing system at a price that did not include certain elements of value which the owners of the existing systems were apparently willing to waive in order to avoid municipal competition.

It was intimated by Rugg, C.J., in *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, at page 208, that it is possible the words "fair cash value" in the taxing statute "must be given a somewhat more elastic significance than heretofore has been attributed to them" in ascertaining the value of certain classes of property, including underground conduits, poles and wires of electric light and power companies. *Union Street Railway* v. *Mayor of New Bedford*, 253 Mass. 304, 309.

The board refused to include in the reproduction cost the expense that would be incurred in replacing street pavement if new mains were laid in the streets. It did not find the amount of such expense which, of course, would be no more than a matter of estimate. The streets may not have been paved when the present mains were installed. The cost of repaving might make the mains valueless for purposes of removal if the system were no longer operated. In any event, the item in question is too speculative to have any material bearing on the market value of the property and it is settled that no error was committed by the board in refusing to consider it. *Des Moines Gas Co.* v. *Des Moines*, 238 U. S. 153. *Dayton Power & Light Co.* v. *Public Utilities Commission of Ohio*, 292 U. S. 290. *Cedar Rapids Gas Light Co.* v. *Cedar Rapids*, 144 Iowa, 426; affirmed 223 U. S. 655. *Oshkosh Water Works Co.* v. *Railroad Commission*, 161 Wis. 122.

The assessors finally contend that the list of taxable property filed by the company with them was insufficient

because it did not set forth the actual quantities of some of the items and did not contain any valuation of the property. The inaccuracies were differences in the linear feet of the mains and service pipes, and in the number of meters, between the amount listed and the actual quantity used by the company. The differences were comparatively slight and did not render invalid the list which was submitted in good faith by the taxpayer. *Great Barrington* v. *County Commissioners*, 112 Mass. 218. *Wright* v. *Lowell*, 166 Mass. 298. *Blackstone Manuf. Co.* v. *Blackstone*, 200 Mass. 82.

The list should enumerate all the personal property owned by the taxpayer that was not exempt from local taxation, G. L. (Ter. Ed.) c. 59, § 29, as amended by St. 1933, c. 254, § 34, and should be prepared upon a form prescribed by the commissioner, G. L. (Ter. Ed.) c. 58, § 5, "so arranged that the statement of the person bringing in such a list will include all assessable property held by him." The form prescribed by the commissioner and used by the taxpayer contained a column for the statement of values, and the printed instructions in reference to personal property advised the taxpayer to state in detail the items of taxable personal property and that machinery must be listed and that "A statement of the value of the whole is not sufficient." The property must be itemized in such detail as will reasonably convey to the assessors a fair understanding of its nature and extent. The purpose of the list is to apprise the assessors of the character and the quantity of the taxable personal property owned by the taxpayer. *Troy Cotton & Woolen Manufactory* v. *Fall River*, 167 Mass. 517. *Boston Rubber Shoe Co.* v. *Malden*, 216 Mass. 508. *Boston & Maine Railroad* v. *Billerica*, 262 Mass. 439. *West Boylston Manuf. Co.* v. *Assessors of Easthampton*, 277 Mass. 180. *Wynn* v. *Assessors of Boston*, 281 Mass. 245. The list is to be taken as true by the assessors except as to valuation, unless the person making the list refuses to answer under oath inquiries relative to the nature and amount of his property. G. L. (Ter. Ed.) c. 59, § 35. *Cotton* v. *Lexington*, 261 Mass. 169. But the statutes, G. L. (Ter. Ed.) c. 58, § 5; c. 59, § 29, do not in terms or by im-

plication require the taxpayer to set forth the value of the property. The taxpayer cannot bind the assessors by stating a value. The evaluation of the property is, in the first instance, the sole duty of the assessors. Whatever the practice is for taxpayers to include the value of their property in lists returned to the assessors, a statement of values is not essential to the validity of the list. In construing Rev. Sts. c. 7, § 22, which provided that the assessors should receive "as the true valuation" the list brought in by the taxpayer, it was held that "The act to be done by the taxpayer, is to bring in a true and correct list; but it does not require in terms, or by implication, that the value shall be set down, estimated, or in any way stated." *Newburyport* v. *County Commissioners of Essex,* 12 Met. 211, 215. *Moors* v. *Street Commissioners of Boston,* 134 Mass. 431. *National Bank of Commerce* v. *New Bedford,* 155 Mass. 313. See *Great Barrington* v. *County Commissioners,* 112 Mass. 218; *National Fireproofing Co.* v. *Revere,* 217 Mass. 63. The list challenged in *Tremont & Suffolk Mills* v. *Lowell,* 271 Mass. 1, 9, on the ground that it did not set forth the property with the requisite particularity was upheld although it contained no statements of value — a point which evidently was not raised. While the statute was changed after the decision in *Newburyport* v. *County Commissioners of Essex,* 12 Met. 211, by omitting any reference to the valuation of the property included in the list, Gen. Sts. c. 11, § 25, and was later amended, Pub. Sts. c. 11, § 40, substantially in the form in which it now appears in G. L. (Ter. Ed.) c. 59, § 35, there is no express requirement that the list should state the value of the property. No such requirement can be found in G. L. (Ter. Ed.) c. 58, § 5. In the absence of such a statutory requirement, an administrative officer under the guise of furnishing the appropriate form of a list cannot impose upon the taxpayer an obligation in addition to that required by the statute, to set forth his valuation of his property. *Commonwealth* v. *McFarlane,* 257 Mass. 530. *Borggaard* v. *Department of Public Works,* 298 Mass. 417. *Commonwealth* v. *Johnson Wholesale Perfume Co. Inc.* 304 Mass. 452. There was no error in denying the motion to

dismiss based upon the alleged failure to file a proper list.

Evidence of the earnings of five other gas companies, all located within this Commonwealth, tended to show the changing demand for gas and the trend of the industry. Although somewhat remote from the issue before the board, we cannot say that such evidence might not shed some light, even though dim, upon the value of the company's property. It would have been better to have excluded such evidence, but its admission does not constitute reversible error. *Conness* v. *Commonwealth*, 184 Mass. 541. *Sunter* v. *Sunter*, 190 Mass. 449. *McCabe* v. *Chelsea*, 265 Mass. 494. *Wright* v. *Commonwealth*, 286 Mass. 371.

It is true, as the assessors urge, that the conclusion reached by the board as to the value of the property did not coincide with the figure given by any witness, but it does not follow, as the assessors contend, that this conclusion was, therefore, unsupported by the evidence. The board was not required to believe the testimony of any particular witness but it could accept such portions of the evidence as appeared to have the more convincing weight. The market value of the property could not be proved with mathematical certainty and must ultimately rest in the realm of opinion, estimate and judgment. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220. *Gechijian* v. *Richmond Ins. Co.* 305 Mass. 132. The board could select the various elements of value as shown by the record and from them form, as it properly did, its own independent judgment. In this there was no error. *Klayman* v. *Silberstein*, 252 Mass. 275. *Hall* v. *College of Physicians & Surgeons*, 254 Mass. 95. *Marquandt* v. *Boston Young Women's Christian Association*, 282 Mass. 28. *Limoges* v. *Limoges*, 287 Mass. 260.

In view of what has been said it is unnecessary to discuss the various other objections raised by the assessors. All of them have been examined with care and there is nothing to indicate that the decision of the board was vitiated by any error of law.

An abatement must be granted in the amount of $23,220 with interest at the rate of five per cent per annum from

November 1, 1935 (the date of payment of the tax), until October 16, 1939 (the effective date of St. 1939, c. 366, § 1), and thereafter at the rate of four per cent per annum, *People v. Sexton,* 284 N. Y. 57, together with the costs of this appeal.

*So ordered.*